**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 20-CV-62166-SINGHAL/VALLE

828 MANAGEMENT, LLC d/b/a THE HUB;
2ND STREET ENTERPRISES, INC. d/b/a
CAPONE'S; THREE LEGGED DOG, LLC
d/b/a LUCKY'S TAVERN; 111 SW 2ND AVE,
LLC d/b/a SWAY NIGHTCLUB; MAGIOS,
INC. d/b/a EBAR CLUB 13; EIM
ENTERPRISES, INC. d/b/a #00 SHATO; JOHR
GROUP, INC. d/b/a EURO NIGHT CLUB;
GRAND CAFÉ, INC.; D'LUX RESTAURANT
AND BAR, LLC d/b/a HOLLYWOOD LIVE;
and TROY CABRERA,

      Plaintiffs,

v.

BROWARD COUNTY, a political subdivision
of the State of Florida,

      Defendant.

_____

**BROWARD COUNTY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

    Broward County ("County"), through the undersigned counsel, and pursuant to Federal

Rule of Civil Procedure 12(b)(6), hereby moves to dismiss Plaintiffs' Complaint (D.E. 1-1), and

in support thereof states as follows:

## I.    Introduction.

    The threat COVID-19 poses is not subject to conjecture; there are hard numbers that tell

the true extent of this once-in-a-lifetime-crisis.  As of the date of this filing, Florida has had

847,821 positive COVID-19 cases; more than 17,179 Floridians have lost their lives, 1,559 in

Broward County alone.  In the 20 days that have passed since Plaintiffs initiated this lawsuit, the

state has added more than 85,963 residents to its tally of positive COVID-19 cases.  The positivity

rate statewide is trending upward, and in Broward County 1 in every 21 people have been

1

diagnosed with the virus.[1]  Nationwide, the country is experiencing a daily average of more than

111,175 cases per day, an increase of 59 percent from the average fourteen days earlier.[2]  It is clear

the country will not return to normalcy any time soon.  Yet, through their Complaint, Plaintiffs

seek to invalidate the County's efforts to curb the spread of COVID-19.   Plaintiffs, however, fail

to plead an entitlement to relief.

## II.     Relevant Background and Plaintiffs' Allegations

COVID-19 is a highly transmissible disease that is significantly more contagious and

deadly than the flu.[3]  There is currently no vaccine to prevent COVID-19; the first and only line

of defense against the virus is avoiding others and wearing facial coverings.

Understanding the unprecedented nature of the pandemic, on March 1, 2020, Florida

Governor Ron DeSantis (the "Governor") declared a public health emergency.  At that time, there

were only two confirmed cases of COVID-19 in the state.  *See* Office of the Governor, Executive

Order 20-51 (March 1, 2020).  Eight days later, as it became apparent that the incidence of

COVID-19 in the State was only going to increase, the Governor declared a state of emergency.

*See* Office of the Governor, Executive Order 20-52 (March 9, 2020).  The next day, the County

followed suit, declaring a state of local emergency and triggering the applicability of Chapter 252,

Florida Statutes, and the County's Comprehensive Emergency Management Plan.  Since then, the

---

[1]     New    York    Times,    Florida    COVID    Map    and    Case    Count, https://www.nytimes.com/interactive/2020/us/florida-coronavirus-cases.html      (last      visited November 9, 2020).

[2]     New   York   Times,   COVID   in   the   U.S.:   Latest   Map   and   Case   Count, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited November 9, 2020).

[3]  Centers for Disease Control, Coronavirus Disease,  https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms. html (last visited October 22, 2020)

County has extended the declaration of the state of emergency in seven-day increments.[4]  Both state and local law authorize the County to issue emergency orders to protect the health, safety, and welfare of its residents.  *See* Section 252.38, Florida Statutes; Section 8-56, Broward County Code of Ordinances.

During the early months of the pandemic, the State required many businesses to close their doors and individuals were ordered to stay home other than to visit or work at essential businesses. *See* Office of the Governor, Executive Order 20-91 (April 1, 2020).  But a lot has changed since then.  Today, the State, pursuant to the Governor's Executive Order 20-244 ("Executive Order 20-244"), prohibits local governments such as the County from preventing any individuals from working or any businesses from operating.  That is why in Broward County *all* businesses are now allowed to operate.  *See* Broward County Emergency Order 20-27, Sections 1 and 2 (stating that all businesses may operate and repealing a former provision that prohibited certain businesses from operating).  But while the County has allowed all businesses to operate, it has also put restrictions in place to curb the spread of COVID-19.  One such restriction forms the basis of Plaintiffs' Complaint and states that:

> On-premises sale, service, and consumption of food and/or alcohol is prohibited between the hours of midnight and 5 a.m. ***This subsection does not limit or prohibit operations other than on-premises dining (including food preparation/cooking, facility cleaning, or food delivery/take-out services) between the hours of midnight and 5 a.m.***

Broward County Emergency Order 20-28 ("EO 20-28") (emphasis added; strikethrough language omitted). Neither EO 20-28 nor any other Broward County Emergency Order[5] imposes

---

[4] *See* Broward County Declarations of Emergency, available at:
https://www.broward.org/CoronaVirus/Pages/EmergencyOrders.aspx#County%20Declarations
[5] *See* Broward County Emergency Orders, available at:
 https://www.broward.org/CoronaVirus/Pages/EmergencyOrders.aspx

a curfew, and Plaintiffs' businesses are not required to close per the plain language of EO 20-28, which states that it ***"does not limit or prohibit operations other than on-premises dining."***

Plaintiffs (a collective of restaurants and other establishments licensed to serve food and alcohol) seek injunctive relief and a declaration that EO 20-28, to which they refer as a curfew, is invalid.  Plaintiffs raise eight counts under state and federal law. All of Plaintiffs' claims are premised on a belief that EO 20-28 imposes a curfew and requires Plaintiffs to cease all operations at midnight and close their businesses. *See* D.E. 1-1, at ¶¶ 35, 68, 74, 83, 88-89 92-103, 107-108, 115-116, and 132-136.  They allege Executive Order 20-244 prohibits local governments such as the County from preventing a business from operating and that EO 20-28 does exactly that—keeps Plaintiffs from being able to operate.  They thus conclude that EO 20-28 is expressly and implicitly preempted and in conflict with the Governor's mandate and is, therefore, an invalid *ultra vires* restriction (Counts I-IV).

Plaintiffs support their First Amendment claim (Count V) by alleging that, through a supposed curfew, EO 20-28 prohibits DJ sets and is thus viewpoint based because it only "affects speakers who operate restaurants and establishments selling alcohol and does not apply to other speakers," and that the restriction in EO 20-28 is not "narrowly tailored" and not "the least restrictive means of regulation."   D.E. 1-1 at ¶¶ 92-101.  Plaintiffs allege EO 20-28 is constitutionally underinclusive (Count VI) because it "inexplicably excludes a host of similarly-situated speakers." *Id.* at ¶ 109.  They contend EO 20-28 cannot survive strict scrutiny. *Id.* at ¶ 111.  In support of their Equal Protection claim (Count VII), Plaintiffs allege that "[n]o other businesses are affected by the curfew, including those which are similar in terms of density, occupancy and rise." *Id.* at ¶116.  As examples of supposedly similarly-situated businesses that are not being treated the same, Plaintiffs mention government facilities and religious institutions.

*Id.* at ¶120.  Plaintiffs conclude there is no rational basis for treating governmental facilities and religious institutions differently than establishments serving food and alcohol. *Id.* at ¶ 121.  Finally, Plaintiffs contend EO 20-28 violates Florida's Constitution (Count VIII), because through the supposed imposition of a curfew, the County is interfering with Plaintiffs' right to freely associate and assemble.  *Id.* at ¶ 130-136.

## III.    Standard

A complaint may be dismissed pursuant to Rule 12(b)(6) if the Plaintiffs have failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive the motion, Plaintiffs "obligation to provide the grounds of [their] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."  *Hood v. Perdue*, 540 F. Supp. 2d 1350, 1356 (N.D. Ga. 2008).  Unless Plaintiffs have "nudged [their] claim across the line from conceivable to plausible," the complaint "must be dismissed." *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), a court must consider the complaint, any exhibits attached to the complaint, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Accordingly, "a court may take judicial notice of the public record, without converting the motion into one for summary judgment because such documents

are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Spechler v. Tobin*, 591 F. Supp. 2d 1350, 1356 (S.D. Fla. 2008). *See also Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 Fed. Appx. 812, 816 (11th Cir. 2014).

A declaratory judgment may only be issued in the case of an actual controversy. That is, there must be a substantial continuing controversy of sufficient reality between parties having adverse legal interests. *Lake Carriers' Assoc. v. MacMullan*, 406 U.S. 498, 506 (1972). The Complaint must set forth facts from which the continuation of the dispute can be inferred. *Ciudadanos Unidos de San Juan v. Hidalgo Cnty. Grand Jury Commrs.*, 622 F.2d 807, 821-22 (5th Cir. 1980) *cert denied*, 450 U.S 946 (1981). The controversy must be "real and immediate" *City of Los Angeles v. Lyons*, 461 U.S, 95, 102 (1983) (citations omitted). Similarly, to seek injunctive relief, Plaintiffs must allege a "real and immediate-as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Shotz v. Cates,* 256 F.3d 1077, 1081 (11th Cir. 2001) (emphasis on original).

### IV.    Legal Argument

Plaintiffs have not stated a claim for relief on any of the counts in their Complaint. First, all counts are premised on a non-existent set of facts and incorrect legal conclusions—that the County has imposed a curfew or otherwise requires businesses to close. Plaintiffs are, therefore, unable to plead the "real and immediate" threat required for declaratory and injunctive relief. Second, even assuming Plaintiffs' facts to be true, Plaintiffs have no claim as a matter of law based on preemption (Counts I-V). Finally, Plaintiffs' Complaint does not support claims for violations of the Federal Constitution when the correct legal standard is applied and fails to support a claim for any State Constitutional violation or entitlement to monetary damages for such alleged violation.

i. *Plaintiffs' Claims Should be Dismissed Because they are Based on the False Premise that EO 20-28 Imposes a Curfew and Requires their Businesses to Close at Midnight.*

Plaintiffs claim EO 20-28 imposes a curfew and requires their businesses to close at midnight. *See* D.E. 1-1, Compl. at ¶ 35, 36, 37, 38.  But EO 20-28 neither imposes a curfew nor requires that Plaintiffs' businesses close.  In fact, the order specifically states that it "does not limit or prohibit operations other than on-premises dining" and there is no reference to a curfew at all. EO 20-28, Attachment 2, B.1. "The starting point in statutory interpretation is the language of the statute itself." *Bankston v. Then*, 615 F.3d 1364, 1367 (11th Cir. 2010) (citations omitted).  In determining whether a statute is plain or ambiguous, the court considers "the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009).

The plain language of EO 20-28 permits Plaintiffs to operate their businesses; DJ sets and music performances can continue after midnight, and employees and patrons may gather at each of Plaintiffs' establishments at any time of the day or night.  Plaintiffs must only cease serving alcohol and food for on-premises consumption between midnight and 5 a.m.  Because all of Plaintiffs' claims are based solely on the false premise that EO 20-28 requires that Plaintiffs' businesses close, there is no "substantial continuing controversy" on which a claim for declaratory judgment can be made and all counts of Plaintiffs' Complaint should be dismissed.

ii. *Plaintiffs have not and cannot State a Claim for Preemption Based on Executive Order 20-244.*

Plaintiffs' claims under Counts I-IV must also be dismissed because, taking all of Plaintiffs' allegations as true, EO 20-28 is not preempted (expressly or otherwise) by Executive Order 20-244, and is not in conflict with the Governor's mandate.

The plain language of Executive Order 20-244 and the State Emergency Management Act, Chapter 252, Florida Statutes, address the extent of preemption intended by the Governor's orders and permit the County to adopt the restrictions in EO 20-28.  "[E]nactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992).  Where, as here, the regulation expressly addresses preemption, there is no need for a court to attempt to infer preemption from other substantive portions of the regulation.  *Id.*  Executive Order 20-244 specifically addresses the extent of preemption intended by the order by pointing to Executive Order 20-92, which preempts only "*conflicting* official action or order[s] issued by local officials in response to COVID-19."  Governor's Executive Order 20-92, Sec. 1 (emphasis added).  In addition to the express language in Executive Order 20-244, Section 252.46 of the State Emergency Management Act, the statute pursuant to which the Governor's orders are issued, permits counties to issue orders "which are *not inconsistent* with any orders" of the Governor. Sec. 252.46, Fla. Stat. (emphasis added)

Shortly after Plaintiffs filed their Complaint, Florida's Third District Court of Appeal, ruling on a case from which Plaintiffs copied their Complaint nearly word-for-word, held that Executive Order 20-244 preempts only local government action that prohibits the operation of a business or the complete shutting down of businesses.  *Miami-Dade Cnty. v. Miami Gardens Square One, Inc.*, No.: 3D20-1512, 2020 WL 6472542, at *4 (Fla. 3d DCA Nov. 4, 2020).  With respect to implied preemption, the court also found that

> [n]othing in the language of EO 20-244's section two suggests that the Governor has preempted the entire field of COVID-19 emergency measures. Its plain language preempts only one class of local COVID-19 emergency measures (i.e., those that "prevent an individual from working or from operating a business"), leaving intact the authority to enact other such measures.

8

*Miami Gardens Square One,* 2020 WL 6472542, at *5.

Plaintiffs' Complaint also does not demonstrate "conflict." "[L]aw[s] conflict where it is '*impossible* for a private party to comply with both.'" *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011) (emphasis added). "Impossibility pre-emption is a demanding defense." *Wyeth v. Levine*, 555 U.S. 555, 573 (2009); *Phantom of Brevard, Inc. v. Brevard County*, 3 So. 3d 309, 314 (Fla. 2008) (explaining the test for conflict is whether in order to comply with one provision, a violation of the other is required). Plaintiffs have not pled facts that demonstrate why it is impossible to comply with both orders. Executive Order 20-244 states that the County cannot prevent individuals from "operating a business." Local governments like the County may continue to impose restrictions like those in EO 20-28. Indeed, they may even go further than the County's orders, by imposing curfews and limiting hours of operation, without conflicting with Executive Order 20-244. *See Miami Gardens Square One,* 2020 WL 6472542, at *4. Plaintiffs, therefore, cannot state a claim that the restrictions in EO 20-28, which are significantly more limited than those in Miami-Dade County, are preempted by or in conflict with Executive Order 20-244.

iii.   <u>*Counts V-VII: Plaintiffs Fail to State a Claim under 42 U.S.C. § 1983 Because they have not Adequately Alleged the Deprivation of a Federal Right.*</u>

Plaintiffs have failed to state a claim under 42 U.S.C. § 1983 ("Section 1983"). To establish a claim under Section 1983, Plaintiffs must prove that they were deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983. Plaintiffs attempt to allege Section 1983 claims for supposed violations of their rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. D.E. 1-1, Compl. at ¶¶ 92-126. These claims must be examined under the framework established by *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905).

In *Jacobson*, the Court explained that while individual rights secured by the Constitution do not disappear in a pandemic, the scope of judicial authority to review rights under these

circumstances is only available "if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, *beyond all question, a plain, palpable invasion of rights secured by the fundamental law*." 197 U.S. at 29 (emphasis added).  Even when taking Plaintiffs' allegations as true, they have failed to state a claim for any such constitutional violation.

<ol type="a" start="1">
<li>The Complaint does not Establish how EO 20-28 Implicates the First Amendment.</li>
</ol>

Plaintiffs allege that EO 20-28 somehow curtails the speech inherent in the music performance aspects of their businesses. *See* D.E. 1-1, Compl. at ¶ 96. However, as discussed in (i), *supra*, nothing in EO 20-28 prevents Plaintiffs from performing music or freely assembling.[6]

The plain language of EO 20-28 merely prohibits on-premises sale, service, and consumption of food and/or alcohol between midnight and 5 a.m. Accordingly, Plaintiffs can continue fulfilling take-out and delivery orders, entertaining customers, and playing music as late as they wish.  EO 20-28 has no bearing on Plaintiffs' rights to free speech or assembly. But, even if it did, any restriction would be merely as an incident of the County's restrictions on economic activity (the sale of food and alcohol from midnight to 5 a.m.). "[R]estrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct," and "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567, (2011).

Furthermore, assuming, *arguendo,* that EO 20-28 implicates the First Amendment, it is a reasonable, content-neutral time, place, and manner restriction that is designed to achieve the

---

[6] Notably, Plaintiffs do not challenge the County's capacity restrictions, which the Governor explicitly permitted in Executive Order 20-244.

County's substantial government interest in fighting COVID-19 and that leaves open ample alternative channels of communication.  It makes no distinction between Plaintiffs' businesses (themselves a diverse group of bars, nightclubs, and restaurants) and a late-night fast-food restaurant or coffee shop—all may stay open, but none may serve food or alcohol for on-premises consumption.  As Plaintiffs admit, EO 20-28 serves purposes wholly unrelated to the content of Plaintiffs' DJ sets or other musical performances (preventing the spread of COVID-19 by restricting on-premises consumption of food and alcohol). *See* D.E. 1-1, Compl. at ¶ 32.  It is, thus, a neutral regulation, "even if it has an incidental effect on some speakers or messages but not others."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  Such neutral regulations are subject to intermediate scrutiny and must be narrowly tailored to achieve a significant government interest and leave open ample alternative channels of communication.  *See DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1267 (11th Cir. 2007).

EO 20-28 survives intermediate scrutiny.  It satisfies the "narrowly tailored" requirement because it "promotes a substantial government interest that would be achieved less effectively absent the regulation."  *Id*.  As a regulation unrelated to the suppression of speech, EO 20-28 also survives the *O'Brien* test, even at the motion to dismiss stage.  *Flanigan's Enterprises, Inc. of Georgia v. Fulton Cty., Ga.*, 596 F.3d 1265, 1277 (11th Cir. 2010).  The *O'Brien* test requires that: (1) the challenged regulation be within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the government interest is unrelated to the suppression of free expression; and (4) the incidental restriction on the alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.  *United States v. O'Brien,* 391 U.S. 367 (1968).

As discussed in detail in (ii) *supra*, even when taking the factual allegations of the Complaint as true, it is within the constitutional power of the County to enact EO 20-28.  Thus, the first prong of the *O'Brien* test is met.  In these unprecedented times, courts across the country have recognized the substantial interest that local governments have in curbing this virus.  *See In re Abbott*, 954 F.3d 772, 784 (5th Cir. 2020) (upholding restrictions on medical providers to preserve hospital capacity for COVID-19 patients); *In re Rutledge*, 956 F.3d 1018, 1027 (8th Cir. 2020) (acknowledging that in response to COVID-19, "the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand") (internal citation omitted); *Talleywhacker, Inc. v. Cooper*, No. 5:20-CV-218-FL, 2020 WL 3051207, at *13 (E.D.N.C. June 8, 2020) (denying a preliminary injunction and finding that "the substantial government interest in preventing the spread of COVID-19 would be achieved less effectively if . . . entertainment and fitness facilities were allowed to reopen, since such facilities present a higher risk of COVID-19 transmission"); *Benner v. Wolf*, No. 20-CV-775, 2020 WL 2564920, at *8 (M.D. Pa. May 21, 2020) ("'[T]here is no question that the containment and suppression of COVID-19 and the sickness and death it causes is a substantial governmental interest.'") (internal citation omitted).  Consequently, the second and third prongs of the *O'Brien* test have been met.

As to the fourth prong, so long as the means chosen are not beyond all question, a plain, palpable invasion of rights secured by the fundamental law, EO 20-28 may not be invalidated simply because the County's interest could be adequately served by some less-speech-restrictive alternative.  *Ward*, 491 U.S. at 800; *Jacobson*, 197 U.S. at 29.  Plaintiffs have not alleged, and cannot allege, such an unquestionably plain palpable invasion of rights secured by the fundamental

law.  The challenged restrictions in EO 20-28 are targeted at late-night drinking and food consumption.  There is no right secured by fundamental law to consume or serve food and alcohol late at night for on-premises consumption.  Moreover, that all other operations are still permitted demonstrates that the restrictions in place are not substantially broader than necessary.  Notably, prohibiting the on-premises sale and consumption of food or alcohol between midnight and 5 a.m. "should not impact the ability of the patrons to hear and enjoy whatever is being played" during the musical expression that Plaintiffs allege is being restricted.  *See DA Mortgage*, 486 F.3d at 1268.

EO 20-28 does not regulate speech.  To the extent it raises any First Amendment concerns, it does so as a content neutral restriction applicable to all food and alcohol establishments in Broward County.  The order serves a substantial government interest, is narrowly tailored, and allows Plaintiffs alternate means of speech.  Thus, Plaintiffs cannot state a claim under the First Amendment.

b.  <u>EO 20-28 does not violate the Equal Protection Clause.</u>

The Fourteenth Amendment prevents any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV.  The Equal Protection Clause requires the government to treat similarly situated persons in a similar manner.  *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009).  "When legislation classifies persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends upon the basis for the classification."  *Id.* at 1306 (quoting *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1337 (11th Cir. 2002)).  If the rule neither infringes a fundamental right nor disadvantages a suspect class, courts apply rational basis review.  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

13

Plaintiffs, as commercial business owners, do not belong to a suspect or quasi-suspect class. *Alsop v. DeSantis*, No. 8:20-CV-1052-T-23SPF, 2020 WL 4927592, at *2 (M.D. Fla. Aug. 21, 2020); *Talleywhacker,* 2020 WL 3051207, at *9 (collecting cases).  Moreover, the regulation of business operations does not "impinge on fundamental rights." *Alsop*, 2020 WL 4927592, at *2 (citing *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426 & n.5 (2010)).  Despite Plaintiffs' allegations, the regulations in EO 20-28 do not restrict speech or other forms of expression. *See* a., *supra*.  Accordingly, rational basis review, ***not*** strict scrutiny, applies to Plaintiffs' Equal Protection claim.

Under rational basis review, EO 20-28 "is presumed to be valid and will be sustained if the classification drawn by the [rule] is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). This test is "highly deferential" to the government.  *Henry v. DeSantis*, No. 20-CV-80729, 2020 WL 2479447, at *6 (S.D. Fla. May 14, 2020) (citing *Gary*, 311 F.3d at 1339).  Furthermore, "those attacking the rationality of the [Order] have the burden to negative every conceivable basis which might support it." *Beach Commc'ns*, 508 U.S. at 314-15 (internal citation omitted).  "In other words, where there are plausible reasons for the rule, [the court's] inquiry is at an end." *Id.* at 313-14.  Further, because the County issued EO 20-28 in response to a public health emergency, the County enjoys an "especially broad" latitude. *Alsop*, 2020 WL 4927592, at *2 (citing *South Bay United Pentecostal Church v. Newsom*, ⸺ U.S. ⸺, 140 S. Ct. 1613, 207 L. Ed. 2d 154 (2020)).

Plaintiffs concede that the County adopted the provisions of EO 20-28 to impose certain health protocols related to COVID-19.  D.E. 1-1, Compl. at ¶ 32.  The County implemented EO 20-28 to prevent the spread of COVID-19 and to protect the health and safety of individuals living in and visiting Broward County.  *See* EO 20-28, p. 2.  As discussed above, this interest is beyond

legitimate and is not, beyond all question, a plain, palpable invasion of rights secured by the fundamental law.  The County Administrator determined that the restrictions on-site food and alcohol, *inter alia*, at restaurants are necessary because of the "inherent nature of onsite dining at restaurants and food service establishments presents several opportunities for people to inadvertently spread the virus . . . because of the inability of patrons to war facial coverings while eating or drinking." *See* EO 20-27, p. 3.  While Plaintiffs may quibble with the rationale, in light of the County's stated purpose, the classification drawn by EO 20-28 is rationally related to the County's legitimate interest.

To the extent that Plaintiffs seek to assert an Equal Protection claim under a "class of one" theory—that the County intentionally treated Plaintiffs differently from others similarly situated and that there is no rational basis for the difference in treatment—this claim also fails.  *See Leib*, 558 F.3d at 1306.  To prove a "class of one" claim, Plaintiffs must show (1) that they were treated differently from other similarly situated individuals, and (2) that the County unequally applied EO 20-28 for the purpose of discriminating against them.  *Id.* at 1307. The "similarly situated" requirement must be rigorously applied.  *Id.*  Different treatment of dissimilarly situated persons does not violate the Equal Protection clause.  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007).

Plaintiffs attempt to draw a comparison between their businesses and distinctly different entities—churches and other religious institutions, government facilities and businesses that do not sell food or alcohol for on-premises consumption. *See* D.E. 1-1, Compl. at ¶¶ 42, 120.  This alone is fatal to their claim.  *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (observing that plaintiffs in a "class of one" case "must demonstrate that they were treated differently than someone who is *prima facie*

identical in all relevant respects"). Plaintiffs fail to allege how they are "in all relevant respects alike" to government facilities, religious institutions, or any other business not engaged in on-site food and beverage consumption, because they cannot. *See Nordlinger*, 505 U.S. at 10. While patrons of Plaintiffs' establishments do not have to wear facial coverings while eating and drinking, the purported comparators do not allow for any periods of unmasking. *See* EO 20-27, Sec. 3 (Broward County's facial covering requirements). And, since the County applied the restrictions of EO 20-28 to *all* commercial establishments serving food or alcohol, Plaintiffs cannot claim to have been singled out by the County. Accordingly, Plaintiffs have failed to state an Equal Protection claim.

c. <u>EO 20-28 is not constitutionally underinclusive.</u>

Plaintiffs claim in Count VI that EO 20-28 violates the First Amendment as constitutionally underinclusive because similarly situated speakers (*e.g.*, churches) are excluded from the Order's time restrictions. *See* D.E. 1-1, Compl. at ¶¶ 104-111. However, this claim is both factually and legally flawed.

"Although a law's underinclusivity may raise a red flag, the First Amendment imposes no freestanding 'underinclusiveness limitation.'" *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (quoting *R.A.V. v. St. Paul,* 505 U.S. 377, 387 (1992)). Underinclusivity implicates the First Amendment when the government regulates one aspect of a problem while declining to regulate a different aspect of the same problem that affects the government's stated interest in a comparable way. *Id.* at 451 (rejecting an underinclusivity challenge to a ban on the personal solicitation of campaign funds by judicial candidates). Plaintiffs' claim implies that the County should impose more restrictions on a wider array of businesses and facilities. However, the Court should not punish the County "for leaving open more, rather than fewer, avenues of expression,

especially when there is no indication that the selective restriction . . . reflects a pretextual motive." *Id.* at 452.

For the same reasons that Plaintiffs fail to state an Equal Protection claim, their underinclusivity challenge also fails. The time restrictions for on-premises consumption of food and alcohol are aimed "squarely at the conduct most likely to" increase the risk of transmission of COVID-19: environments where persons are unable to masks because they are eating or drinking. *See id.* at 449; EO 20-27, p. 3. These risks are not inherent in government facilities, churches or other religious facilities, or other business that do not sell food and alcohol for on-site consumption. And, other than general legal conclusions, Plaintiffs have failed to allege how, with respect to the regulations and these purported comparators, the County has failed to address to address the same problem that affects its stated interest in a comparable way.

EO 20-28 is directed at *all* commercial establishments serving food or alcohol and its restrictions apply "evenhandedly" to all restaurants and establishments serving alcohol and food, "regardless of their viewpoint." *Id.* As such, it cannot be said to be underinclusive, and Plaintiffs claim for a violation of the First Amendment on this ground fails.

        iv.   *Count VIII: Plaintiffs have not Stated a Claim for a Violation of their Rights of Privacy, Association. or Assembly under the Florida Constitution and Cannot Claim Money Damages Against the County.*

Count VIII, which purports to allege violations of Sections 5 (right to privacy) and 23 (right of association) of Article I of the Florida Constitution, must also be dismissed. *See* D.E. 1-1, Compl. at ¶¶ 130-136. Other than various recitations and conclusory legal statements about "curfews," Plaintiffs plead no facts about how the provisions of EO 20-28 violate any of Plaintiffs'

State Constitutional rights to privacy or association.[7] *See* D.E. 1-1, Compl. at ¶¶ 130-136.  Neither EO 20-28 nor any other emergency order issued by Broward County in response to COVID-19 imposes a curfew. *See* (i), *supra*. The County cannot fathom (and Plaintiffs have not pled) any privacy interests that are implicated by EO 20-28 and nothing in EO 20-28 prevents Plaintiffs and others from gathering and associating.  *See State v. J.P.*, 907 So. 2d 1101, 1111 (Fla. 2004) (finding no violation of the Florida Constitution where the ordinance allowed plaintiffs to engage in protected activities).  Again, all EO 20-28 prohibits is on-site dining and consumption of alcohol between midnight and 5 a.m.  Because Plaintiff have stated no facts to support their claim for violation of rights under the Florida Constitution and no curfew is imposed by EO 20-28, Plaintiffs have failed to state a claim for violation of the Florida Constitution.

Further, even if Plaintiffs stated a claim under Count VIII, Plaintiffs claim for money damages fails. *See* D.E. 1-1., Compl. at p. 24.  The County has sovereign immunity from suits seeking money damages for violations of Article VI of the Florida Constitution. In Florida, sovereign immunity is the rule, rather than the exception. *Pan Am Tobacco Corp. v. Dept. of Corrections*, 471 So. 2d 4, 5 (Fla. 1984). Article X, Section 13, Florida Constitution provides that "[p]rovisions may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating." Consent or waiver to suit requires "specific, clear, and unambiguous language in a statute to constitute a waiver of sovereign immunity." *Manatee County v. Town of Longboat Key*, 365 So. 2d 143, 147 (Fla. 1978). Nothing in the text of Article I, section 23 of the Florida Constitution provides specific, clear, and unambiguous language to constitute a waiver of sovereign immunity. *See Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st DCA 1994); *see*

---

[7] Again here, Plaintiffs claims in Count VIII are a near word for word recitation of a complaint filed in Miami-Dade County challenging materially different regulations.  Plaintiffs have not even attempted to tailor the allegations to their circumstances or to Broward County's regulations.

*also Garcia v. Reyes*, 697 So. 2d 549, 550 (Fla. 4th DCA 1997) (finding that there was no waiver of sovereign immunity for a constitutional tort); *see also Gamble v. Florida Dept. of Health and Rehabilitative Services*, 779 F. 2d 1509, 1515 (11th Cir. 1986) (holding that while state and its agencies may be liable under traditional torts, sovereign immunity shields them from liability for "constitutional torts").

Moreover, money damages are not available against the County for a state constitutional violation. *See Resha*, 634 So. 2d at 759 (holding no money damages available under Art. I, § 23 of the Florida Constitution); *Reyes*, 697 So. 2d at 550 (holding that there was no cause of action for money damages from conduct arising under the due process clause, article I, section 9, of the Florida Constitution); *Bradsheer v. Florida Dept. of Highway Safety and Motor Vehicles*, 20 So. 3d 915, 921 (Fla. 1st DCA 2009) (finding that appellant cannot receive monetary reimbursement if there was a violation of their state constitutional rights); *Fernez v. Calabrese*, 760 So. 2d 1144, 1146 (5th DCA 2000) (finding that monetary damages cannot be recovered in an action against the State for a violation of state constitutional rights); *Youngblood v. Florida Dept. of Health*, 224 Fed. Appx. 909, 913 n.4 (11th Cir. 2007) (noting that district court properly dismissed plaintiff's claims alleging monetary damages under the Florida Constitution because there is no cause of action for monetary relief under the Florida Constitution). Plaintiffs have not sufficiently alleged any entitlement to a private cause of action for money damages under Article I, section 23 of the Florida Constitution.

## V.      Conclusion

Based on the foregoing, Plaintiffs have not and cannot plead an entitlement to relief and the Complaint must be dismissed with prejudice.

Dated: November 10, 2020          Respectfully submitted,

Andrew J. Meyers
Broward County Attorney
115 S. Andrews Avenue, Suite 423
Fort Lauderdale, FL 33301
Telephone: (954) 357-7600
Facsimile: (954) 357-7641

By:      */s/ Annika Ashton*
      Annika Ashton
      Deputy County Attorney
      Florida Bar No. 53970
      aashton@broward.org
      Kristen McIntosh
      Assistant County Attorney
      Florida Bar No. 1003315
      kmmcintosh@broward.org
      Adam Katzman
      Assistant County Attorney
      Florida Bar No. 652431
      akatzman@broward.org

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on November 10, 2020, that service was performed via an email generated by CM/ECF to all counsel of record listed in the below Service List.

By: *s/ Annika E. Ashton*
Annika E. Ashton, Florida Bar No. 53970

Bradford M. Cohen
Michael J. McMullen
Cohen & McMullen, P.A.
1132 SE 3rd Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 523-7774
Facsimile: (954) 523-2656
bmc@floridajusticefirm.com
michael@floridajusticefirm.com
service@floridajusticefirm.com
service.bclaw@gmail.com
lawronin@aol.com
*Counsel for the Plaintiffs*

Jonathan Noah Schwartz
Jonathan Schwartz Law PLLC
10200 NW 25th Street, Suite 111
Doral, FL 33172
Telephone: (786) 535-1530
Facsimile: (786) 338-7435
jschwartz@jonschwartzlaw.com
jnsesquire@gmail.com
*Counsel for the Plaintiffs*