IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:20-cv-62166-AHS

828 MANAGEMENT, LLC d/b/a THE HUB; 2ND STREET ENTERPRISES, INC. d/b/a CAPONE'S; THREE LEGGED DOG, LLC d/b/a LUCKY'S TAVERN; 111 SW 2ND AVE, LLC d/b/a SWAY NIGHTCLUB; MAGIOS, INC. d/b/a EBAR CLUB 13; EIM ENTERPRISES, INC. d/b/a #00 SHATO; JOHR GROUP, INC. d/b/a EURO NIGHT CLUB; GRAND CAFE, INC.; D'LUX RESTAURANT AND BAR, LLC d/b/a HOLLYWOOD LIVE; and TROY CABRERA,

      Plaintiffs,

v.

BROWARD COUNTY, a political subdivision of the State of Florida,

      Defendant.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**BROWARD COUNTY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

COME NOW all of the plaintiffs, 828 Management, LLC d/b/a The Hub, 2nd Street Enterprises, Inc. d/b/a Capone's, Three Legged Dog, LLC d/b/a Lucky's Tavern, 111 SW 2nd Ave, LLC d/b/a Sway Nightclub, Magios, Inc. d/b/a EBar Club 13, EIM Enterprises, Inc. d/b/a #00 Shato, Johr Group, Inc. d/b/a Euro Night Club, Grand Cafe, Inc., D'Lux Restaurant and Bar, LLC d/b/a Hollywood Live and Troy Cabrera (collectively, the "Plaintiffs"), by and through their undersigned counsel, and respectfully submit this Response in Opposition to the Defendant, Broward County's (the "Defendant"), Motion to Dismiss Plaintiffs' Complaint [DE 11]. The Plaintiffs respond narrowly thereto as follows:

1

I.      **Legal Standard.**

"In reviewing a motion to dismiss under Rule 12(b)(6), Fed[.] R. Civ. P., . . . a court must take all well-pleaded facts in a plaintiff's complaint and all reasonable inferences drawn from those facts as true." *Clark v. Bakst (In re Trafford Distrib. Ctr.)*, 520 B.R. 147, 153 (Bankr. S.D. Fla. 2014) (citing *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994)). "A pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). It must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. It must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Finally, "[a]ny decision on a motion to dismiss a complaint for failure to state a cause of action must be based on a review of the four corners of the Complaint and documents referred to therein that are central to the claim at issue." *JP Morgan Chase Bank, N.A. v. Ruiz (In re Ruiz)*, 2010 Bankr. LEXIS 6182, at *2 (Bankr. S.D. Fla. 2010) (citing *Griffin Industries v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007); *Wilchombe v. TeeVee Tunes, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009)).

II.     **The Plaintiffs' Claims are Premised on a Curfew, as Emergency Order 20-28 Places a Curfew on the In-Person Consumption of Food and Alcohol Between 12 AM and 5 AM, Precluding Operation of Restaurants and Bars by Definition and Substance Between Those Hours and Effectively Shuttering Nightclubs Entirely.**

As a primary matter, the Defendant alleges that "all counts are premised on a non-existent set of facts and incorrect legal conclusions–that the County has imposed a curfew or otherwise

requires businesses to close." Motion to Dismiss at 6. The Plaintiffs have clearly pled that Emergency Order 20-28 effectively places a curfew between 12 AM and 5 AM on restaurants and bars considering that Emergency Order 20-28 makes unlawful the in-person consumption of food and alcohol between 12 AM and 5 AM. *See, e.g.*, Complaint at ¶ 33 ("Emergency Order 20-28 continues to impose a curfew on restaurants and bars, as well as open containers, between midnight and 5 A.M., yet allows 'food preparation/cooking[]' and 'food delivery/take-out services[]' past that curfew."). Of course, since a bar is defined as a "counter at which food or especially alcoholic beverages are served" or "a room or establishment where alcoholic drinks and sometimes food are served[,]" there can be no bar where there is a prohibition on the in-person consumption of food and alcohol. *Bar*, MERRIAM-WEBSTER, *available at* merriam-webster.com/dictionary/bar (last accessed Dec. 7, 2020). Similarly, there can naturally be no restaurant where there is a prohibition on the in-person consumption of food. Thus, effectively, there is a curfew on restaurants and bars where Emergency Order 20-28 places a ban on the in-person consumption of food and alcohol between certain hours. For that reason, the Defendant is wrong in arguing that "[b]ecause all of Plaintiffs' claims are based solely on the false premise that EO 20-28 requires that Plaintiffs' businesses close, there is no 'substantial continuing controversy' on which a claim for declaratory judgment can be made and all counts of Plaintiffs' Complaint should be dismissed." Motion to Dismiss at 7.

### III.  Emergency Order 20-28 is Expressly and Impliedly Preempted by, and in Conflict with Executive Order 20-244.

####   A.  Express Preemption.

The Plaintiffs brought a claim for express preemption as Count I of their Complaint. *See* Compl. at ¶¶ 53-68. The Defendant argues that "Executive Order 20-244 preempts only local government action that prohibits the operation of a business or the complete shutting down of

businesses." Motion to Dismiss at 8 (citing *Miami-Dade Cnty. v. Miami Gardens Square One, Inc.*, No.: 3D20-1512, 2020 WL 6472542, at *4 (Fla. 3d DCA Nov. 4, 2020)). As noted *supra*, Emergency Order 20-28 effectively places a curfew on bars and restaurants, thereby prohibiting their operation and completely shutting them down. For bars and nightclubs, it is even more egregious than for restaurants, as those businesses do the overwhelming majority of their business, without which their business models would be infeasible, during the curfew hours.

With all of this in mind, the Plaintiffs pled that "Section 2 of Executive Order 20-244, entitled 'Right to Work and Operate a Business,' states that '[n]o COVID-19 emergency ordinance may prevent an individual from working or operating a business.'" Compl. at ¶ 58. They further pled that

> [a]mong the express conflicts between the Governor's Executive Order and Broward County's curfew are the following:
>
> a. The Governor's Executive Order does not list curfews as an acceptable form of local regulation; only occupancy restrictions are permitted and then only within narrow guidelines.
>
> b. The Governor's Executive Order imposes certain preconditions on the enactment of local COVID-19 orders in terms of the factual predicate required to enact such local laws. Broward County has not complied with those preconditions because it does not set forth the economic cost of the curfew, as opposed to occupancy or other restrictions, and it does not provide a factual basis for concluding that COVID-19 is more likely to spread during late night hours as opposed to daytime hours, or in restaurants as opposed to other businesses where people gather in large numbers in close proximity.

*Id.* at ¶ 67. Considering these allegations read alongside the exhibits to the Complaint, it is clear that Emergency Order 20-28 is expressly preempted by Executive Order 20-244. Accordingly, Count I should not be dismissed.

### B. Implied Preemption.

"Unlike the explicit nature of express preemption, 'implied preemption occurs when the state legislative scheme is pervasive and the local legislation would present a danger of conflict with that pervasive scheme.'" *Vazzo v. City of Tampa*, 415 F. Supp. 3d 1087, 1094 (M.D. Fla. 2019) (quoting *D'Agostino v. City of Miami*, 220 So.3d 410, 421 (Fla. 2017)). "The *D'Agostino* Court held that the test for implied preemption requires the courts to look 'to the provisions of the whole law, and to its object and policy.'" *Id.* (quoting *D'Agostino*, 220. So.3d at 421).

The Plaintiffs pled that "[t]he Governor's Order is so pervasive as to inten[d] to pre-empt this entire field of regulation." Compl. at ¶ 73. Further, Executive Order 20-244 implicitly supersedes COVID-19 municipal or county orders as pled in paragraph 74 of the Complaint, including that Executive Order 20-28 "go[es] against the intent of Executive Order 2-244, and [is] implicitly overruled by Executive Order 20-244." *Id.* at ¶ 74. Therefore, Count II should not be dismissed.

### C. Conflict.

In its third claim for relief, the Plaintiffs brought a cause of action for conflict. *See* Compl. at ¶¶ 75-83. The Defendants believe that the Plaintiffs' Complaint also does not demonstrate conflict. *See* Motion to Dismiss at 9.

As the Plaintiffs pointed out in their Complaint, "[t]he test of conflict between a local government enactment and state law is 'whether one must violate one provision in order to comply with the other. Putting it another way, a conflict exists when two legislative enactments cannot coexist.'" Compl. at ¶ 76 (quoting *The Sarasota Alliance for Fair Elections, Inc. v. Browning*, 28 So.3d 880 (2010)). "If conflict arises, state law prevails." *The Sarasota Alliance for Fair Elections, Inc.*, 28 So.3d at 891.

The Plaintiffs pled that "[i]f law enforcement complies with Governor DeSantis' Executive Order 20-244 and allows the Plaintiffs and other[s] similarly situated to remain open after 11:59 P.M., then they would be allowing a violation of Broward County Executive Order 20-28." Compl. at ¶ 80. Consequently; "[s]ince law enforcement cannot navigate and comply with both the Governor's Order and Broward County's Order in tandem, these orders are in conflict." *Id.* at ¶ 81. Considering these allegations read alongside the text of the Governor's Order and Broward County's Order attached to the Complaint, which speak for themselves, it is clear that there is a conflict and thus state law should prevail. For that reason, Count III should not be dismissed.

**IV.  Plaintiffs Adequately State a Claim Under 42 U.S.C. §1983 Because They Sufficiently Alleged the Deprivation of Their Federal Rights as Protected by the U.S. Constitution.**

To establish a claim under 42 U.S.C. §1983, Plaintiffs must prove that they were deprived of a federal right by a person acting under the authority of state law. 42 U.S.C. §1983. EO 20-28 is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905). "[A]ccording to settled principles the police power of a State must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety. *Id.* at 26 (citing *Gibbons v. Ogden*, 9 Wheat. 1, 203). As stated *supra*, the County's order is preempted by the Governor's Order (EO 20-244), and is an unreasonable regulation implicating Plaintiffs' constitutionally enumerated rights.  This triggers judicial authority to review rights implicated under the First Amendment and 14th Amendment (namely the Equal Protection Clause and the Privileges or Immunities Clause).

    **A. EO-28 Implicates Plaintiffs' First Amendment Rights as it Unconstitutionally Imposes on Their Right of Assembly and Entertainment.**

        i.    <u>Plaintiffs bring forth a cognizable First Amendment claim.</u>

"As a threshold matter, we must ask whether the First Amendment protects the conduct at issue in the challenged ordinance – playing or broadcasting recorded music. It does. The Supreme Court has clearly stated that the First Amendment protects music, as a form of speech and expression, from governmental censorship and control." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254 (11th Cir. 2007) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1981)). It is undeniable that businesses in the entertainment, promotional events, and night club industry are also in the business of expressive dances, music, and other modes of expression that implicate the First Amendment. "[H]is business [] involve[d] the promotion, production, and presentation of some measure of expressive dances or musical or other expressive performances sufficient to implicate First Amendment concerns." *Abusaid v. Hillsborough County Bd. Of County Comm'rs*, 637 F. Supp. 2d 1002, 1022 (M.D. Fla. 2007). Like in *Abusaid,* Plaintiffs in the present matter are in the entertainment, promotional, night club, and private club and bottle club business involving the promotion, production, and presentation of some measure of musical or other expressive performances protected by the First Amendment. Because EO 20-28 restricts the DJs, promoters, performers, and the like from freely performing their sets in the restricted hours of midnight to 5 a.m., their clearly enumerated First Amendment rights have been encroached upon. Further, patrons who frequent these establishments are now unable to freely assemble due to the County's order, which further places an undue imposition on a protected constitutional right.

        ii.     <u>EO 20-28 does not survive intermediate scrutiny.</u>

EO 20-28 is subject to intermediate security as it is a content-neutral restriction. *Club Madonna, Inc. v. City of Miami Beach,* 2020 U.S. Dist. LEXIS 79444, at *17 (S.D. Fla. May 5, 2020) (citing *Curves, LLC v. Spalding City., Ga.,* 685 F.3d 1284, 1289 (11th Cir. 2012)). "To survive intermediate scrutiny, a statute must be 'narrowly tailored to serve a significant

governmental interest' and 'leave open ample alternative channels for communication of the information' at issue." *Delgado v. Swearingen*, 375 F. Supp. 3d 1251, 1261 (N.D. Fla. 2018) (citing *Ward*, 491 U.S. at 791 (1989)).  The test for establishing whether a regulation is within the constitutional power of the government is articulated in *United States v. O'Brien*, 391 U.S. 367, 377 (1968), which provides: (1) the [challenged regulation] must be within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the government interest is unrelated to the suppression of free expression; and (4) the incidental restriction on the alleged First Amendment freedoms must not be greater than is essential to the furtherance of that interest.  In other words, "a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests." *Club Madonna, Inc. v. City of Miami Beach*, 2020 U.S. Dist. LEXIS 79444, at *17 (S.D. Fla. May 5, 2020) (quoting *Ward*, 491 U.S. at 789-99; *Curves, LLC,* 685 F.3d at 1289).  Further, "[t]he Supreme Court has made clear that 'an incidental burden on speech is **no greater than essential,** and is therefore permissible under *O'Brien,* so long as the neutral regulation promotes a substantial government interest that **would be less effective absent the regulation.'**" *First Vagabonds Church of God v. City of Orlando*, 638 F.3d 756, 762-763 (11th Cir. 2011) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985) (emphasis added).

EO 20-28 fails the O'Brien test and does not survive intermediate scrutiny.  EO 20-28 is clearly greater than is essential because Defendant allows the activity prohibited between 12 a.m. and 5 a.m. to occur during the remaining 19 hours of the day.  Defendant proffered no genuine evidence to substantiate the reasoning behind such restrictions, and attempt to mitigate the unfair effects of EO 20-28 by claiming that there is nothing in the language of the order that prevents Plaintiffs from performing music and from freely assembling. *See* Def.'s Mot. at 13.  Defendant

8

further argues that the order allows Plaintiffs alternate means of speech (*See* Def.'s Mot. at 13) yet fails to articulate any such alternatives. Their argument entirely fails as entertainment is ancillary to the sale of food and beverages to patrons in the food service industry. Prohibiting the latter effectively extinguishes the former. Banning customers from dining and purchasing drinks in these establishments entirely nullifies any need for entertainment as there is no use in entertaining an empty room. Granting Plaintiffs the agency to respect and uphold the state's interest of curbing the spread of COVID-19 via independent means such as dismissing uncooperating and obstreperous patrons, or by reducing the maximum capacity at a given time (calculated by the square footage of the subject facility) clearly demonstrates that the burden placed on Plaintiffs is much greater than is essential and the county's desired effects can be achieved by less restrictive means. For the foregoing reasons, EO 20-28 violates the First Amendment rights of not only Plaintiffs, but also their owners, managers, employees, and others working and visiting there.

**B. EO 20-28 Violates the Equal Protection Clause Because It Is Applied in an Arbitrary and Discriminatory Manner.**

i.  <u>Plaintiffs bring forth a cognizable Equal Protection.</u>

A valid law that is applied in an arbitrary and discriminatory manner is a violation of the Equal Protection Clause. *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). Further, a classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. *Reed v. Reed*, 404 U.S. 71 (1971). The Equal Protection Clause of the 14th Amendment prohibits disparate treatment of similarly situated individuals. *See, e.g. Hendking v. Smith,* 781 F.2d 850, 851 (11th Cir. 1986) (quoting *Zeigler v. Jackson,* 638 F.2d 776, 779 (5th Cir. 1981)). "[T]o properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately." *Thigpen v. Bibb County,*

223 F.3d 1231, 1237 (11th Cir. 2000), *abrogated on other grounds by Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 122 (2002).

In the present case, fundamental rights are at issue because Plaintiffs' – as well as their owners, managers, employees, and others who work and visit there – rights to free speech are being trampled as a direct result of Defendant's scheme to impose a curfew as to the in-person consumption of food and alcohol. This is the basis and substance of Plaintiffs' businesses, and such curfews are not being imposed upon other businesses not engaged in on-site food and beverage consumption. EO 20-28 does distinguish between Plaintiffs and other businesses, because those not selling food or alcohol are allowed to remain open without any restrictions whatsoever, during the hours when Plaintiffs are effectively forced to close due to the curfew on the in-person consumption of food and alcohol. Considering the nature of Plaintiffs' businesses, it is impractical to assert that Plaintiffs can continue fulfilling takeout and delivery orders, entertaining customers, and playing music as late as they wish. *See* Def.'s Mot. at 10. Fulfilling the rare takeout or delivery order is subordinate to the primary functions of these businesses, and as a direct result of the county's order, many of the subject businesses will be forced to permanently close their doors.

        ii.    <u>The appropriate standard of review is strict scrutiny, which EO 20-28 does not survive.</u>

Considering fundamental rights are at issue here, strict scrutiny must be applied. *See, e.g., Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 904 (1986) ("Whenever a state law infringes a constitutionally protected right, we undertake intensified equal protection scrutiny of that law."); *Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("[C]lassifications affecting fundamental rights…are given the most exacting scrutiny."); *Pottinger v. City of Miami*, 810 F. Supp. 1551

1551, 1577-78 (S.D. Fla. 1992) ("[G]overnment classifications that infringe on constitutionally protected rights also require heightened scrutiny.") Further, the Supreme Court of the United States has explained that "[u]nless a statute provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457-458 (1988) (quoting *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982); *Lyng v. Automobile Workers*, 485 U.S. 360, 370 (1988)). "The freedom of expressive association, that is, 'the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion,' is protected by the First Amendment as a fundamental right." *Fagan v. City of Marco Island*, 2005 U.S. Dist. LEXIS 36389, at *15-16 (M.D. Fla. 2005) (quoting *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994)).

Defendant argues that the appropriate standard of review is rational basis scrutiny, because Plaintiffs do not belong to a suspect or quasi-suspect class and the regulation of business operations does not impinge of fundamental rights. *See* Def.'s Mot. at 14. Defendant's position is incorrect, as EO 20-28 implicates a fundamental right as it encroaches on Plaintiffs' First Amendment rights, and thus, triggers a strict scrutiny application and analysis. However, assuming, *arguendo,* that strict scrutiny should not be applied, EO 20-28 still violates the 14th Amendment because the curfew imposed on in-person food and alcohol consumption cannot be rationally related to a legitimate governmental purpose where Defendant, by permitting the prohibited behavior during the remaining 19 hours of the day, has conceded that no legitimate governmental purposes exists to prohibit the in-person consumption of food and alcohol from the hours of 12 a.m. to 5 a.m., as

admitted by Defendant's own medical expert, Dr. Stanley W. Marks. Therefore, Defendant, through its lawmaking, concedes that the prohibited activities – namely the consumption of food and alcohol – are safe during other times of the day.

Further, Plaintiffs are being treated differently from other similarly situated individuals – specifically, those owners of small businesses operating in industries other than the in-person consumption off food and alcohol – as those in other lines of business are not subjugated to the same curfew. It is illogical to argue that other businesses are not similar because they do not require the taking off of masks, as many other activities, such as, forms of exercise and eating and drinking while on a break from work, do require taking off one's mask. Even among other restaurants, Plaintiffs find themselves in the disadvantaged position of suffering great economic hardship merely because their patrons visit their establishments at night. It is entirely illogical to presume that because an establishment operates chiefly during the day, serving food and alcohol, it is safer in terms of COVID-19 protocols than an establishment conducting the same exact business, at night. In fact, a restaurant operating during the day can have the same number, if not more, of patrons midday as a bar or nightclub in question can have at midnight. The same practice of donning masks, mingling with other patrons, and moving about the premises exists in both scenarios. However, Defendant insists that because Plaintiffs' chiefly operate at night, they pose a greater threat to the transmission of COVID-19. Defendant's position is wholly unfounded, as they have relied upon no actual evidence from which to base their claims. As such, this is an unfair and inappropriate punishment for the nighttime food industry and moreover, EO 20-28 is arbitrary, discriminatory, and clearly violative of the Equal Protection clause.

    **C. EO 20-28 Is Constitutionally Underinclusive Because it Is Limited to Restaurants and Establishments Selling Alcohol, Thereby Excluding Broad Groups from Its Scope.**

"Underinclusiveness can raise 'doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.'" *Cosac Found., Inc. v. City of Pembroke Pines*, No. 12-62144, 2013 U.S. Dist. LEXIS 135647 at *35 (S.D. Fla. Sep. 21, 2013) (quoting *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 789, 131 S. Ct. 2729, 180 L. Ed. 2d 708, 722). Underinclusiveness can also reveal that a law does not actually advance a compelling interest. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015). Plaintiffs claiming that a law is unconstitutionally vague must prove either (1) the law fails to provide people of ordinary intelligence to understand what conduct the law prohibits or (2) the law authorizes or encourages arbitrary and discriminatory enforcement. *Vazzo v. City of Tampa*, No. 8:17-cv-2896-T-02AAS, 2019 U.S. Dist. LEXIS 35935 (M.D. Fla. Jan. 30, 2019) (citing *Konikov v. Orange Cty.*, 410 F.3d 1317, 1329 (11th Cir. 2005).

In the present case, despite Defendant's assertion that the order is applied evenhandedly to all restaurants and establishments serving food and alcohol (*See* Def.'s Mot. at 17), there is a disproportionate effect on the nighttime food and alcohol industry. This supports the view that this particular industry is disfavored and is unfairly subject to the injurious effects that EO 20-28 imposes upon them. Furthermore, as outlined *supra*, solely because the nighttime food industry conducts its business during later hours, they will suffer gravely as a result of the enforcement of EO 20-28, which effectively encourages discriminatory application. Raising the sole argument that patrons are unlikely to comply with safety orders late at night is not based on any evidence, and easily fails by considering the following example: a patron dining in a restaurant at 8 p.m. can – after consuming alcohol with dinner – exhibit the same irresponsibility Defendant so fears happening after midnight. Rather than punishing honest businesses from making a living during these unprecedented and economically challenging times, the Order should focus its efforts on

encouraging safer human behavior altogether. Arbitrarily closing the doors to certain business at certain hours will not stop people from behaving irresponsibly as a whole. EO 20-28 will merely penalize already struggling businesses, when there is no guarantee or data to suggest that such a decision will actually curb the spread of COVID-19, or have any effect whatsoever. Thus, contrary to Defendant's assertion, EO 20-28 is constitutionally vague and underinclusive, singling out – in effect – businesses that rely on nighttime business.

### D. EO 20-28 Violates the Fifth Amendment as well as the Privileges or Immunities Clause of the 14th Amendment as it Impinges Upon Plaintiffs' – and Their Respective Owners, Managers, And Employees – Right to Practice Their Profession.

"[N]othing is more clearly settled than that it is beyond the power of a state, 'under the guise of protecting the public, arbitrarily [to] interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them." *New State Ice Co. v. Liebmann*, 285 U.S. 262, 278 (1932). "'It requires no argument to show that the right to work for a living…is of the very essence of the personal freedom and opportunity that it was the purpose of the Amendment to secure.'" *Rodriguez v. P&G*, 465 F. Supp. 3d 1301, 1325-1326 (S.D. Fla. 2020) (quoting *Traux v. Raich*, 239 U.S. 33,41 (1915). In Florida, "the right to work, earn a living and acquire and possess property from the fruits of one's labor is an inalienable right." *Lee v. Dalmar*, 66 So.2d 252, 255 (Fla. 1953). Further, "included in the right of personal liberty and the right to private property is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment by which labor and other services are exchanged for money or other forms of property. If that right be stricken down or arbitrarily interfered with there is a substantial impairment of liberty in the long-established constitutional sense." *State ex. rel. Fulton v. Ives*, 123 Fla. 401, 411 (1936).

14

EO 20-28 unreasonably interferes with Plaintiffs' (and, by extension, their staff's) ability to conduct their business through its prohibitions on the nighttime food and alcohol industry. As the country faces great economic hardship, now, more than ever before, Plaintiffs' staff members are in dire need of job security and the lucrative tips that are typical in the food services industry in order to adequately provide for themselves and their families. The Order also has the long-term deleterious effect of leaving a number of these professionals jobless, as many of the subject establishments may not survive extended periods of forced closure during the prohibited hours. It has already been established, *supra,* that EO 20-28 arbitrarily interferes with the domain of private businesses, namely those serving food and alcohol, and that there are less restrictive means of achieving their desired result of curbing the transmission of COVID-19. The challenged Order is simply experimenting with an unsubstantiated theory that closing some businesses at certain hours will curb the spread of COVID-19, and is doing so at the expense of Plaintiffs' – and by extension their owners', managers', and employees' – livelihoods. Thus, EO 20-28 unreasonably and unnecessarily impinges upon the constitutionally protected right to practice one's profession as safeguarded by the 14th Amendment.

In light of the foregoing, EO 20-28 is unconstitutional as it unreasonably infringes on Plaintiffs' First and 14th Amendment rights.

**V.      Plaintiffs Adequately State a Claim Under the Florida Constitution.**

"When called upon to decide matters of fundamental rights, Florida's state courts are bound under federalist principles to give primacy to our state Constitution and to give independent legal import to every phrase and clause contained therein." *Traylor v. State*, 596 So.2d 957, 962 (Fla.1992). Thus, in order for EO 20-28 to be held constitutional, it must past muster under both the state and federal constitutions.

In *Moore v. Thompson*, 126 So.2d 543 (Fla.1960), the court addressed the validity of a statute that restricted the right of motor vehicle dealers to operate at certain times, including Sundays and legal holidays. In striking down the ordinance as unconstitutional, the court focused its analysis on precedent related to restrictions placed on businesses under the guise of proper exercise of the police power, *id*. at 249-250, stating:

> It is not suggested that the parties who work on used car lots need protection from being cajoled into uninterrupted labor more than do citizens who are engaged in any of the exempt businesses or vocations. We can think of no reason, and none has been suggested to us, why the health, safety, morals or general welfare of our citizens would be safeguarded to any greater degree by requiring used car dealers to close their places of business on Sunday than such rights or guarantees would be safeguarded were such persons allowed to do business on the Sabbath along with proprietors of tourist attractions. Nor is it clear to us that any reasonable basis exists for exempting parking lots and filling stations from the operation of these so-called 'Sunday Closing Laws' and not exempting garages. Such distinctions appear to be nebulous, wholly arbitrary and are made without a reasonable basis for upholding them as a valid exercise of the police power. Indeed, each of these distinctions fits into the category of a "distinction without a difference."

*Id*. at 250.

When a statute or ordinance operates to the disadvantage of a suspect class or impairs the exercise of a fundamental right, then the law must pass strict scrutiny. *See, e.g., Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Mitchell v. Moore*, 786 So.2d 521, 527 (Fla.2001). A fundamental right is one which has its source in and is explicitly guaranteed by the federal or Florida Constitution. *See, e.g., T.M. v. State*, 784 So.2d 442, 444 n.1 (Fla.2001); *Reno v. Flores*, 507 U.S. at 302, 113 S.Ct. 1439. Both the First Amendment and article I, section 5 of the Florida Constitution protect the rights of individuals to associate with whom they please and assemble with others for political and social purposes. The United States Supreme Court has "long

understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Also encapsulated within Florida's annunciation of fundamental rights is the right of privacy. Fla. Const. Art I, § 23.

Plaintiffs have alleged that Defendant's EO 20-28 has both directly and indirectly placed a curfew on their operations as a result of the significant restrictions enacted which limit their ability to conduct their primary functions and the enforcement of same which resulted in mandatory closures and fines. By removing patrons from Plaintiffs' establishments and forcing closures, the ability of owners, workers, and patrons to associate with one another and assemble has been abridged for which there is no justification. Even more insulting is Defendant's attempt to inject unwarranted governmental intrusion into the private life of the persons of this State in an undeniable fashion. Because the provisions limiting the sale of food and alcohol between the hours of midnight and 5 a.m. violate both federal and state constitution, they should be stricken from the body of EO 20-28 in compliance with its own mandate.

> Any provision(s) within this Emergency Order that (i) conflict(s) with any state or federal law or constitutional provision, or (ii) conflict(s) with or are superseded by a current or subsequently-issued Executive Order of the Governor or the President of the United States solely to the extent such Executive Order (a) expressly preempts the substance of this Emergency Order or (b) imposes stricter closures than set forth herein, shall be deemed inapplicable and deemed to be severed from this Emergency Order, with the remainder of the Emergency Order remaining intact and in full force and effect.

EO 20-28, p. 3-4.

**CONCLUSION AND ALTERNATIVE REQUEST FOR LEAVE TO AMEND**

For the foregoing reasons, the Plaintiffs respectfully request that this Honorable Court deny the Defendant's Motion to Dismiss [DE 11], or alternatively grant the Plaintiffs leave to file an amended complaint should the Defendant's Motion to Dismiss be granted either in whole or in part, as well as any and all other relief deemed just and proper.

| | |
|---|---|
| **/s/ Bradford M. Cohen** | **/s/ Jonathan N. Schwartz** |
| Bradford M. Cohen, Esq. | Jonathan Noah Schwartz, Esq. |
| Florida Bar No. 118176 | Florida Bar No. 1014596 |
| **/s/ Michael J. McMullen** | JONATHAN SCHWARTZ LAW PLLC |
| Michael J. McMullen, Esq. | 10200 NW 25th Street, Suite 111 |
| Florida Bar No. 106109 | Doral, FL 33172 |
| COHEN & MCMULLEN, P.A. | Tel.: (973) 936-2176 |
| 1132 SE 3rd Avenue | E-mails: jschwartz@jonschwartzlaw.com |
| Fort Lauderdale, FL 33316 | |
| Tel.: (954) 523-7774 | |
| E-mails: bmc@floridajusticefirm.com | |
| michael@floridajusticefirm.com | |
| service@floridajusticefirm.com | |

Dated this seventh day of December, 2020.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 7, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served via CM/ECF on this day on all counsel of record on the Service List below.

Respectfully submitted,

| | |
|---|---|
| **/s/ Bradford M. Cohen** | **/s/ Jonathan N. Schwartz** |
| Bradford M. Cohen, Esq. | Jonathan Noah Schwartz, Esq. |
| Florida Bar No. 118176 | Florida Bar No. 1014596 |
| **/s/ Michael J. McMullen** | JONATHAN SCHWARTZ LAW PLLC |
| Michael J. McMullen, Esq. | 10200 NW 25th Street, Suite 111 |
| Florida Bar No. 106109 | Doral, FL 33172 |
| COHEN & MCMULLEN, P.A. | Tel.: (973) 936-2176 |
| 1132 SE 3rd Avenue | E-mails: jschwartz@jonschwartzlaw.com |
| Fort Lauderdale, FL 33316 | |
| Tel.: (954) 523-7774 | |
| E-mails: bmc@floridajusticefirm.com | |
| michael@floridajusticefirm.com | |
| service@floridajusticefirm.com | |

**SERVICE LIST**

Adam Katzman, Esq.
Kristin McIntosh, Esq.
Office of the Broward County Attorney
115 S. Andrews Avenue, Suite 423
Fort Lauderdale, FL 33301
Tel.: (954) 357-7600
Fax: (954) 357-7641
E-mails: akatzman@broward.org
         kmmcintosh@broward.org