UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-62166-CIV-SINGHAL

828 MANAGEMENT, LLC, et al.,

    Plaintiffs,

v.

BROWARD COUNTY, a political subdivision of
the State of Florida,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on the Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and Incorporated Memorandum of Law (DE [8]). Defendant filed its response ("Response") (DE [9]) and Plaintiffs filed a reply, accordingly, the matter is ripe for review. This Court heard very well-presented oral argument from counsel on November 19, 2020. This Court considered the motion, the record, and is otherwise fully advised in the premises.

**I.**    **BACKGROUND**

Plaintiffs include a collective of restaurants and entertainment establishments licensed to serve food and libations in Broward County, Florida (collectively, "Plaintiffs"). They initially filed this matter in the Seventeenth Judicial Circuit in and for Broward County, Florida on October 19, 2020, seeking declaratory relief, injunctive relief, and damages against the Defendant Broward County (the "County") under 42 U.S.C. § 1983 based on state law claims for Express Preemption (Count I); Implied Preemption (Count II); Conflict (Count III); *Ultra Vires* and *Void Ab Initio* (Count IV); violations of the First

Amendment of the U.S. Constitution (Counts V and VI); violations of the Equal Protection Clause of the U.S. Constitution (Count VII); and violations of Article I, Section 23 of the Florida Constitution (Count VIII).  On October 26, 2020, the County removed the matter to federal court pursuant to 28 U.S.C. § 1441(a).  Plaintiffs' First Amendment and Equal Protection claims for damages under 42 U.S.C. § 1983 arise under federal law, over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.  Furthermore, the County contends this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because such claims arise from the same nucleus of operative facts as Plaintiffs' federal claims and are also related so that they form part of the same case or controversy under Article III of the United States Constitution.

The Plaintiffs own and operate restaurants and alcoholic beverage establishments in Broward County, Florida.  For many years these establishments have operated their bars, restaurants, and kitchens past midnight.  In response to the COVID-19 pandemic, ostensibly in the name of public health, the County enacted a series of emergency orders ("Emergency Orders") purportedly authorized by section 252.46, Florida Statutes, including the imposition of lockdowns requiring all "non-essential" businesses to close their doors and requiring all "non-essential" individuals to shelter in place.

On April 29, 2020, the Governor of the State of Florida, Ron DeSantis (the "Governor") issued Executive Order 20-112 to allow for the re-opening of businesses and the recovery of Florida's economy following the implementation of social distancing, quarantine, mask policies, and other safety procedures.  About two weeks later, Executive Order 20-123 was issued and increased the permissive occupancy of these businesses to fifty percent (50%) and allowed other retail establishments, gyms, museums, and

professional sports venues, among other businesses, to also resume operations upon implementation of certain safety measures. Plaintiffs claim that despite the Governor's order, the County's subsequent emergency orders imposed significant restrictions on business operations and such restrictions have had a devastating financial impact on Plaintiffs' businesses and their employees. Plaintiffs further claim the Emergency Orders issued by the County supersede the laws within the municipality.

The gradual plan for re-opening of the State of Florida was done in stages, and culminated with "Phase 3," the third and final stage pursuant to Executive Order 20-244. The Governor issued Executive Order 20-244 on September 25, 2020, based on a finding that the State of Florida has suffered economic harm as a result of COVID-19-related closures, exacerbating the impact of the State of Emergency, and Floridians should not be prohibited by local government from working or operating a business. Executive Order 20-244 immediately directed the re-opening of all business in the State of Florida. By the Executive Order's plain language, restaurants are treated differently than other businesses, and the Order suspends the collection of fines and penalties associated with COVID-19, prohibits local government from reducing the capacity of restaurants except where the local government makes specific fact-based findings that "*quantif[ies] the economic impact of each limitation or requirement on those restaurants*" and "*explain[s] why each limitation or requirement is necessary for public health*." Fla. Exec. Order 20-244, §§ 3(A)(i), (ii) (Sept. 25, 2020) (emphasis added). Furthermore, Plaintiffs claim Executive Order 20-244 expressly preempts all inconsistent local emergency ordinances consistent with Executive Order 20-92.

Three weeks after the issuance of Executive Order 20-244, on October 16, 2020, the County issued Broward County Emergency Order 20-28 ("County Emergency Order 20-28"), which allows businesses to re-open subject to certain health protocols related to COVID-19. Plaintiffs claim County Emergency Order 20-28, however, continues to impose a curfew on restaurants and bars and prohibits the sale or consumption of food or alcohol between the hours of midnight and 5:00 a.m. Plaintiffs claim County Emergency Order 20-28 is irrational and arbitrary on its face and lacks any legislative predicate for significant limitations placed on restaurants. And, Plaintiffs allege there is no factual or logical basis to believe that COVID-19 is more likely to spread during late night hours as opposed to daytime hours and there is no factual or logical basis to believe that COVID-19 is more likely to spread at restaurants as opposed to other businesses where people gather in large numbers in close proximity.

Plaintiffs argue they should not have to comply with the curfew because that portion of County Emergency Order 20-28 is preempted by state law, represents an *ultra vires* act not authorized by law, and is facially unconstitutional. Plaintiffs maintain County Emergency Order 20-28 is void *ab initio* and cannot be enforced against them. Plaintiffs claim they have involuntarily closed their businesses under threat of civil fines and criminal repercussions. And, Plaintiffs allege they have suffered and will continue to suffer grievous economic injury in the form of lost profits and damage to good will as a result of the curfew, which is exacerbated because the Plaintiffs' businesses were already under economic stress as a result of closures for over nine months in response to the COVID-19 pandemic. The curfew, they say, has had a disproportionate impact on restaurants and bars because other businesses, churches, government operations, and

other institutions are not subject to the 12:00 a.m. to 5:00 a.m. curfew and have not been forced to close their doors during those hours.  Finally, Plaintiffs argue the curfews imposed by County Emergency Orders 20-27 and 20-28 are preempted by state law, conflict with state law, are *ultra vires* acts not authorized by state law, and are violative of the Constitutions of the State of Florida and the United States.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 65(b)(1) authorizes the court to issue a temporary restraining order where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1).  "A temporary-restraining order . . . operates to prevent immediate irreparable injury until a hearing can be held to determine the need for a preliminary injunction" while "a preliminary injunction is effective until a decision has been reached at a trial on the merits."  11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2941 (3d ed. 2017).  In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest."  *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

The moving party must "clearly establish[] the burden of persuasion for each prong of the analysis."  *Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over*

*Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1163 (11th Cir. 2018) (citations omitted).  "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'"  *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).[1]

## III.   DISCUSSION

In the instant motion, Plaintiffs request this Court issue a temporary restraining order against the enforcement of County Emergency Order 20-28 and make the ultimate determination that County Emergency Order 20-28 is preempted by state law, conflicts with state law, is an *ultra vires* act not authorized by state law, and is violative of the Constitutions of the State of Florida and the United States of America.  Plaintiffs argue they are likely to succeed on the merits because County Emergency Order 20-28 is preempted by state law; specifically, express and implied preemption by Executive Order 20-244.  Local counties and municipalities are encouraged to establish their own emergency management plans, but such plans must always be "coordinated and consistent" with the state's comprehensive emergency management plan and program, as well as any executive orders, proclamations, and rules issued by the Governor.  *See* Fla. Stat. § 252.38(1)(a); *see also* Fla. Stat. § 252.35(2)(b).  Plaintiffs claim the County recognized these limitations in its "Comprehensive Emergency Management Plan," which requires it be "reviewed and revised on a regular basis" in order to "ensure compliance"

---

[1] Plaintiff, here, argues that a denial of this Motion will result in the closure of business and the loss of livelihood.  This Order will therefore focus on discussion of elements (1) and (4) collectively.

6

and "be effective." Plaintiffs also assert County Emergency Order 20-28 violates its First and Fourteenth Amendment rights.

The County has repeatedly insisted County Emergency Order 20-28 does not institute a curfew. Instead, it merely prohibits the sale, service, and consumption of food or alcohol on the premises after midnight. The County argues nothing in County Emergency Order 20-28 prevents Plaintiffs from performing music or freely assembling. County Emergency Order 20-28 expressly limits Plaintiffs ability to make sales on the public service of food and beverage, it does not, however, purport to close the premises to the public. As a means of deterrence, among the tiered penalties to a business owner for the violation of County Emergency Order 20-28 is a term of ninety days in jail and a fine of $15,000. The fine is the same as that for conviction of a felony punishable by life in prison.[2]

The County first argues in opposition that Plaintiffs are unlikely to succeed on the merits on any of their claims because they are based on a mistaken belief that County Emergency Order 20-28 imposes a curfew and requires their businesses to close at midnight. Sections 1 and 2 of County Emergency Order 20-28, however, does place a limit on the in-person consumption of food and alcohol. The County asserts County Emergency Order 20-28 was implemented because of patrons' inability to wear facial coverings while engaging in these activities and because, as the night wears on, individuals become more inebriated and compliance with social distancing and other COVID-19 regulations becomes increasingly unlikely. Thus, the second part of the

---

[2] *See* Fla. Stat. § 775.083(1)(a) ("A person who has been convicted of a noncriminal violation may be sentenced to pay a fine. Fines for designated crimes and for noncriminal violations shall not exceed: (a) $15,000, when the conviction is of a life felony.").

7

County's argument is behavior based. That is to say, the County argues, in essence, that because citizens cannot be trusted to behave properly, the County must restrict their behavior. But, it is not for the court to evaluate the wisdom of the County imposed restrictions. In any such case, the court's role is not to determine whether the County's position is correct, but to review whether, on the record presented, the ordinance restricting behavior is arbitrary or in the case in which restrictions are authorized by an administrative agency, whether they violate the separation of powers.[3]

The County also contends Plaintiffs are confusing the County's Emergency Orders with the City of Fort Lauderdale's regulations. In other words, the County claims the citations are based on the enforcement of city regulations not county. This contention is directly contravened by the citation on record, which indicates the City of Fort Lauderdale was enforcing County Emergency Order 20-28. *See* (DE [8-1]) ("This form . . . instructed the business to 'comply with the City *Emergency Order 20-28* in closing the establishment at 12 a.m.") (emphasis added). The County further insists County Emergency Order 20-28 is neither preempted by nor prohibited by Executive Order 20-244. Plaintiffs disagree and direct this Court to Section 2 of Executive Order 20-244.

Section 2 of Executive Order 20-244 provides: "No COVID-19 emergency ordinance may prevent an individual from working or from operating a business. This preemption is consistent with Executive Order 20-92." Fla. Exec. Order 20-244 § 2 (Sept. 25, 2020). Additionally, Executive Order 20-244 suspended "the collection of fines and

---

[3] *See N.Y. Statewide Coal. of Hispanic Chambers of Commerce v. N.Y. City Dept. of Health & Mental Hygiene*, 970 N.Y.S.2d 200, 213 (App. Div. 2013) ("Before concluding, we must emphasize that nothing in this decision is intended to circumscribe DOHMH's legitimate powers. Nor is this decision intended to express an opinion on the wisdom of the soda consumption restrictions, provided that they are enacted by the government body with the authority to do so. Within the limits described above, health authorities may make rules and regulations for the protection of the public health and have great latitude and discretion in performing their duty to safeguard the public health.").

penalties associated with COVID-19 enforced upon individuals." *Id.* at § 4. In County Emergency Order 20-28, Broward County extended the time for on-premises sale and consumption of food and alcohol until midnight. County Emergency Order 20-28, however, prohibits dine-in service between midnight and 5:00 a.m., which directly prevents an individual from working or from operating such a business during those hours. *See* Fla. Exec. Order 20-244 § 2 (Sept. 25, 2020).

"In Florida, a municipality is given broad authority to enact ordinances under its municipal home rule powers." *City of Hollywood v. Mulligan*, 934 So. 2d 1238, 1243 (Fla. 2006). Municipal ordinances, however, must yield to state statutes. *See Masone v. City of Aventura*, 147 So. 3d 492, 496 (Fla. 2014). Article VIII, section 2(b), Florida Constitution, specifically recognizes the power of municipalities "to conduct municipal government, perform municipal functions and render municipal services," and it specifically recognizes that municipalities "may exercise any power for municipal purposes *except as otherwise provided by law*." Art. VIII, § 2(b), Fla. Const. (emphasis added.); *see also* Fla. Stat. § 166.021 (relating to the exercise of municipal powers). "The critical phrase of article VIII, section 2(b)—'except as otherwise provided by law'— establishes the constitutional superiority of the Legislature's power over municipal power." *City of Palm Bay v. Wells Fargo Bank, N.A.*, 114 So. 3d 924, 928 (Fla. 2013). Chapter 252, from which the Governor's own enumerated and delegated emergency powers derive, equally "confer[s] upon . . . the governing body of each political subdivision of the state the emergency powers provided herein." Fla. Stat. § 252.32(1)(b); *see also* Fla. Stat. § 252.38(1) ("Safeguarding the life and property of its citizens is an innate responsibility of the governing body of each political subdivision of the state.").

"Preemption essentially takes a topic or a field in which local government might otherwise establish appropriate local laws and reserves that topic for regulation exclusively by the legislature." *Phantom of Clearwater, Inc. v. Pinellas County*, 894 So. 2d 1011, 1018 (Fla. 2d DCA 2005). "Preemption of local ordinances by state law may, of course, be accomplished by express preemption—that is, by a statutory provision stating that a particular subject is preempted by state law or that local ordinances on a particular subject are precluded." *Masone*, 147 So. 3d at 496. Preemption by state law, however, "need not be explicit so long as it is clear that the legislature has clearly preempted local regulation of the subject." *Barragan v. City of Miami*, 545 So. 2d 252, 254 (Fla. 1989). "Implied preemption is found where the state legislative scheme of regulation is pervasive and the local legislation would present the danger of conflict with that pervasive regulatory scheme." *Sarasota Alliance for Fair Elections, Inc. v. Browning*, 28 So. 3d 880, 886 (Fla. 2010). Even "where concurrent state and municipal regulation is permitted because the state has not preemptively occupied a regulatory field, 'a municipality's concurrent legislation must not conflict with state law.'" *City of Palm Bay*, 114 So. 3d at 928 (quoting *Thomas v. State*, 614 So. 2d 468, 470 (Fla. 1993)). "Such 'conflict preemption' comes into play 'where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute.'" *Id.* (quoting 5 McQuillin Mun. Corp. § 15:16 (3d ed. 2012)).

A preemption challenge is a facial attack on the constitutionality of a legal enactment. *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019). A facial constitutional challenge considers only the text of the law, "not its specific application to a particular set of circumstances." *Fraternal Order of Police, Miami Lodge*

*20 v. City of Miami*, 243 So. 3d 894, 897 (Fla. 2018) (citation omitted). To succeed, "the challenger must demonstrate that no set of circumstances exists in which the [law] can be constitutionally valid." *Id.*

County Emergency Order 20-28 expressly prohibits the sale, service, or consumption of food or alcohol after midnight. As such, Plaintiffs argue County Emergency Order 20-28 prevents them from working or operating a business between the hours of midnight and five in the morning. The County argues nothing in Executive Order 20-244 prohibits the County from establishing common-sense restrictions to minimize the spread of COVID-19, especially in high-risk settings. Testimony from experts and witnesses were directed towards the likelihood of contracting COVID-19 while under the influence of alcohol between the permitted operating hours and after the prohibited time frames. The County argued the consumption of alcohol lowers inhibitions, which may prevent the observation of social distancing guidelines. This argument is well-taken based not only on common knowledge, but also in large part on the testimony of Dr. Stanley Marks at the hearing and by affidavit. But the County's position is also that common knowledge suggests people drink alcohol more freely between midnight and 5:00 a.m. While that may be true, from a proof standpoint as to this issue, there was no testimony at the hearing, and the affidavits are conclusory. And, the restrictions on the sale, service, or consumption of *food*, is not related, in this record, to the increasing likelihood of contracting COVID-19. The record is certainly absent any analysis that "quantif[ies] the economic impact of each limitation or requirement on those restaurants" and "explain[s] why each limitation or requirement is necessary for public health" as

11

applied to food service.  Fla. Exec. Order 20-244, §§ 3(A)(i), (ii) (Sept. 25, 2020).  Thus, on this record, the temporal restrictions on food and alcohol service are rather arbitrary.

Next, the County insists such restriction is not a curfew.  This Court notes that Executive Order 20-244 does not expressly address curfews or emergency COVID-19 measures in general.  Instead, the order states that, among the COVID-19 emergency measures that local governments may enact, none may "prevent an individual from working or from operating a business."  Fla. Exec. Order 20-244 § 2 (Sept. 25, 2020). This subsection intends to be preemptive.  *Id.*  However, the narrow issue here is whether the County's limitation of food and beverage service, sale, or consumption falls within the realm of emergency measures forbidden.

"The starting point in statutory interpretation is the language of the statute itself." *See Bankston v. Then*, 615 F.3d 1364, 1367 (11th Cir. 2010) (citations omitted).  In determining whether a statute is clear or ambiguous, the court considers "the language itself, the specific context in which the language is used, and the broader context of the statute as a whole."  *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009).  Plaintiffs argue that, since County Emergency Order 20-28 stops and impedes business operations involving serving the pubic while it is in effect, it is a measure preventive of work and operations under the Executive Order.  County Emergency Order 20-28 specifically states it "does not limit or prohibit operations *other than on-premises dining* (including food preparation/cooking, facility cleaning, or food delivery/take-out services) *between the hours of midnight and 5 a.m.*"  Cnty. Er. Order 20-28, Attach. 2, B.1. (Oct. 16, 2020) (emphasis added).

The County insists Plaintiffs are still permitted to operate their businesses because patrons are still permitted to gather on the premises for music and entertainment. Indeed, during cross-examination, the County indicated mixologists could continue to practice their craft, but patrons should not be permitted to consume the beverage. The County ultimately argues all of Plaintiffs claims fail because such claims are based on the false premise that County Emergency Order 20-28 requires Plaintiffs to close their businesses. This Court cannot agree with such characterization. Executive Order 20-244 expressly provided for the operation of restaurants and establishments with a food license and that such establishments "may not be limited by a COVID-19 emergency order by any local government." Fla. Exec. Order 20-244 § 3.A. (Sept. 25, 2020). Plaintiffs argue the County attempts to bypass the capacity limitation by prohibiting the sale, service, or consumption of food. "It is an elementary principal of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage." *Hetchman v. Nations Title Ins.*, 840 So. 2d 993, 996 (Fla. 2003). Even "[t]he title is more than an index to what the section is about or has reference to; it is a direct statement by the legislature of its intent." *State v. Webb*, 398 So. 2d 820, 825 (Fla. 1981). Attachment 2 of Emergency Order 20-28 is directed at "all establishments serving food and alcohol." Further, Section B, is entitled "Operations Requirement." Such prohibition has ultimately prevented individuals from working and has prevented Plaintiffs from operating their business. Executive Order 20-244 relevantly reads:

> WHEREAS, the State of Florida has suffered economic harm as a result of COVID-19-related closures exacerbating the impacts of the State of Emergency, and Floridians *should not*

13

> *be prohibited by local governments from working or operating a business.*

Fla. Exec. Order 20-244 (Sept. 25, 2020) (emphasis added). "The first of the two conjoined clauses suggests that the kind of 'prevention' of work or operations forbidden by the order is one which results in business *closures*, while the second clause further explains that the closures in mind are those specifically resulting from local government's *prohibitions* of work or business operations." *Miami-Dade Cty. v. Miami Gardens Square One, Inc.*, 2020 WL 6472542, at *4 (Fla. 3d DCA Nov. 4, 2020) (citations omitted) (emphasis in original) ("*Square One*"). "The preamble, therefore, suggests that what the Governor meant by emergency measures that 'prevent an individual from working or from operating a business' under section two were enactments of law that expressly prohibited and altogether closed businesses down." *Id.* Judge Fleur Lobree writing for Florida's Third District Court of Appeal thus found the preemption argument unavailing in the instance where Miami-Dade County had instituted curfews, because the businesses were not altogether closed down. Here, while the County insists the midnight to 5:00 a.m. restrictions do not operate as a curfew, they in fact do. Plaintiffs' businesses cannot effectively stay open if prohibited from serving food and drink. But, consistent with the *Square One* analysis, this helps the County's position as to the preemption claims. The County's Emergency Order 20-28 does not fall within the express limitation of Executive Order 20-244.

Alternatively, Plaintiffs argue County Emergency Order 20-28 is impliedly preemptive because the legislative scheme of regulation is so pervasive and presents a danger of conflict with that pervasive regulatory scheme. Plaintiffs insists the irreconcilable conflict between the two orders could not be clearer and County Emergency

Order 20-28 stands as an obstacle to the execution of the full purposes of Executive Order 20-244.  "Implied preemption should be found to exist only in cases where the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature." *GLA & Assocs., Inc. v. City of Boca Raton*, 855 So. 2d 278, 282 (Fla. 4th DCA 2003) (quoting *Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc.*, 681 So. 2d 826, 831 (Fla. 1st DCA 1996)).  Generally, "an interpretation of state statutes [or orders] which would impede the ability of local government to protect the health and welfare of its citizens should be *rejected* unless the Legislature [or Governor] has *clearly expressed* the intent to limit or constrain local government action." *M & H Profit, Inc. v. City of Panama City*, 28 So. 3d 71, 77 (Fla. 1st DCA 2009) (emphasis added).  Here, Executive Order 20-244 clearly expresses the intent to limit local government from preventing individuals from working or operating a business.

Plaintiffs are a collective of restaurants and entertainment establishments licensed to serve food and beverages to patrons.  A local ordinance prohibiting the sale, service, or consumption of such services on the premises during a certain period of time has the consequence of preventing Plaintiffs from working or operating their business.  Executive Order 20-244, however, does not prohibit local government from establishing common-sense restrictions to minimize the spread of COVID-19, especially in high-risk settings.  Thus, the County is well within its authority to enact restrictions for the public health, and such restrictions survive preemption analysis so long as the County quantifies the economic impact of each restriction, limitation or requirement on those restaurants impacted, and "explain[s] why each limitation or requirement is necessary for public

health." Fla. Exec. Order 20-244, §§ 3(A)(i), (ii) (Sept. 25, 2020).  While the County may very well be able to do so, and with great dispatch, this record does not satisfy the quantification and explanation mandate of Executive Order 20-244.  More specifically, the portion of County Emergency Order 20-28 restricting food and alcoholic beverage service from the hours of midnight to 5:00 a.m. is speculative and arbitrary as presented, and does not address the economic impact/public health plain language of Executive Order 20-244.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and Incorporated Memorandum of Law (DE [8]) is **GRANTED**.[4]  The County is enjoined from enforcing those provisions of County Emergency Order 20-28, which restrict food and alcoholic beverage service from midnight to 5:00 a.m.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 21st day of December 2020.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF

---

[4] Having carefully considered the parameters involved in ordering Plaintiff to post security under this Order granting Preliminary Injunction, the court determines no security is necessary.