2021 WL 516282

2021 WL 516282
Only the Westlaw citation
is currently available.
United States District Court, S.D. Florida.

7020 ENTERTAINMENT,
LLC and others, Plaintiffs,
v.
MIAMI-DADE COUNTY, Defendant.

Civil Action No. 20-25138-Civ-Scola
|
Signed 02/10/2021
|
Entered 02/11/2021

**Attorneys and Law Firms**

Daniel Robert Aaronson, James Scott
Benjamin, Benjamin, Aaronson, Edinger &
Patanzo, PA, Fort Lauderdale, FL, Gary Scott
Edinger, Benjamin, Aaronson, Edinger &
Patanzo, P.A., Gainesville, FL, for Plaintiffs.

Angela Freda Benjamin, David Marion
Murray, Zachary Edward Vosseler, Miami-
Dade County Attorney's Office, Miami, FL, for
Defendant.

**Order on Motion to Dismiss**

Robert N. Scola, Jr., United States District
Judge

**\*1** This matter is before the Court upon the
Defendant's motion to dismiss the Plaintiffs'
complaint. The Court held a hearing on the
Defendant's motion on February 2, 2021.
Counsel for the Plaintiffs and the Defendant

appeared and presented arguments for the
Court's consideration. For the reasons set
forth below, the Court **grants** the Defendant's
motion. (**ECF No. 18**.)

**1. Background**

The COVID-19 pandemic continues to
severely impact individuals and businesses not
only throughout South Florida, but throughout
America. To date, over 27.2 million Americans
have been infected with the deadly COVID-19
virus and almost 470,000 Americans have
died. Of those, over 1.7 million infections and
over 28,000 deaths have impacted Floridians.
In recognition of the severity of COVID-19,
on March 9, 2020, Florida's Governor, Ron
DeSantis, declared a state of emergency. (ECF
No. 1-3.) Miami-Dade County followed suit
and declared a local state of emergency on
March 12, 2020. (ECF No. 1-2.) Since these
emergency declarations, Miami-Dade County
has implemented a variety of measures which
straddle the line of saving lives and minimizing
the impact of Florida's economy on the lives
of its residents. One such measure which is at
issue here is Miami-Dade County's curfew.

The Plaintiffs in this matter are 7020
Entertainment, LLC, a company which owns
and operates KOD Miami, "a restaurant and
alcoholic beverage establishment in Miami
Dade County that features live entertainment
in the form of exotic dance on several stages,"
and individuals affiliated with KOD Miami,
including Michael Coleman, an employee of
KOD Miami, Brian Kravetz a bartender at
KOD Miami, and Kala Majors, an exotic
dancer at KOD Miami. These Plaintiffs allege
that the County's curfew unconstitutionally
infringes on their First Amendment rights and

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)

2021 WL 516282

ask the Court to enjoin the County from its enforcement.

By way of background, on July 2, 2020, the Mayor of Miami-Dade County issued Emergency Order 27-20 which instituted a curfew requiring individuals in the County to remain home from 10:00 p.m. until 6:00 a.m. the next morning. Miami-Dade County, Emergency Order 27-20, at https://www.miamidade.gov/information/ library/07.02.20-emergency-order-27-20.pdf. [1] The curfew excepted emergency responders and essential workers from its scope, among others, and noted it would extend for the duration of the County's state of emergency, unless cancelled earlier by the County's mayor. *Id*. On September 9, 2020, the County amended Emergency Order 27-20 to add exemptions for national professional sports leagues and those traveling to and from religious services. Miami-Dade County, Emergency Order 27-20 Amendment 1, at http://www.miamidade.gov/information/ library/coronavirus-emergency-order-27-20-amendment-1.pdf. The order was amended a second time on September 11, 2020 to reduce the curfew's duration from 11:00 p.m. to 6:00 a.m., effective September 14, 2020. Miami-Dade County, Emergency Order 27-20 Amendment 2, at http://www.miamidade.gov/information/ library/coronavirus-emergency-order-27-20-amendment-2.pdf. Executive Order 27-20 was amended most recently on October 10, 2020 to reduce the curfew's duration such that it would now only be in effect from 12:01 a.m. to 6:00 a.m. (ECF No. 1-5.)

**\*2** While the County's curfew was in place, Florida's Governor began reopening the state through a phased reopening plan. On September 25, 2020, the Governor issued Executive Order 20-244, which declared Florida was entering Phase 3, the final stage of the state's reopening, which noted "[n]o COVID-19 emergency ordinance may prevent an individual from working or from operating a business." (ECF No. 1-3.) The Order also noted, with respect to restaurants, that such businesses:

> may not be limited by a COVID-19 emergency order by any local government to less than fifty percent (50%) of their indoor capacity. If a restaurant is limited to less than one hundred percent (100%) of its indoor capacity, such COVID-19 emergency order must on its face satisfy the following: (i) quantify the economic impact of each limitation or requirement on those restaurants; and (ii) explain why each limitation or requirement is necessary for public health.

(ECF No. 1-3.) Accordingly, the Governor's Executive Order required municipalities and counties throughout Florida to provide additional information justifying any emergency orders which impacted restaurants such as KOD Miami.

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)

2021 WL 516282

In apparent response to Executive Order 20-244, Miami-Dade County issued Emergency Order 30-20. Miami-Dade County, Emergency Order 30-20, at https://www.miamidade.gov/information/library/coronavirus-emergency-order-30-20.pdf. Emergency Order 30-20 noted the County took "actions ... at the beginning of July to close certain establishments, impose a curfew, and expand the application of physical distancing and facial covering requirements ... to mitigate the spread of COVID-19 and reduce the daily positivity rate." *Id.* Acknowledging the requirements set forth in Governor DeSantis's Executive Order 20-244, Emergency Order 30-20 noted "the restaurant industry has experienced a 15 percent reduction in sales in March 2020, a 48 percent reduction in sales in April 2020, a 65 percent reduction in May 2020 and a 54 percent reduction in June 2020, as compared to January 2020 sales." *Id.* The Order went on to state that these losses "reflect both government restrictions on restaurants and also customers who chose not [to] patronize restaurants due to concerns about COVID-19." *Id.* The order continued by stating that the government's social distancing restrictions and curfew order, among other restrictions, "individually and collectively, could result in a continued loss of sales for such restaurants of 54 percent as compared to prior years, based on data through June 2020." *Id.* The order explained that these restrictions were necessary because COVID-19 travels through air droplets and can spread through asymptomatic individuals such that action by the County was necessary to ensure individuals do not inadvertently spread COVID-19 while they sit and eat. *Id.* As with

Emergency Order 27-20, Emergency Order 30-20 states it will expire upon expiration of the County's state of local emergency, unless cancelled earlier by the County's Mayor.

Emergency Order 30-20 was amended on October 14, 2020, adding additional justifications for the County's curfew order. The amended order noted that:

> the County, during this pandemic, has observed that persons socializing at night, particularly youth, are often not attentive to social distancing, especially in places where alcohol is served or available, including house parties, bars, restaurants, and clubs ... persons in bars, restaurants, and other places where food and drink are consumed are not wearing masks, rendering social distancing all the more important ... the purpose of the curfew is [to] reduce the spread of COVID and to save lives by, among other things, prohibiting late night socializing which was a critical vector for the spread of COVID in May and June of this year"

**\*3** (ECF No. 1-7.) The order also noted the County's curfew was recommended by "medical experts consulted by the County,

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)
2021 WL 516282

including members of the White House Coronavirus Task Force." (ECF No. 1-7.) Accordingly, the order states the County's curfew "remains necessary to ensure that people, particularly young people, are not gathering and socializing in ways that pose a direct threat to the health of themselves, their parents, and grandparents." (ECF No. 1-7.)

Other counties in Florida have similarly issued curfew orders. For instance, on October 16, 2020, Broward County issued Emergency Order 20-28, which imposed a curfew in Broward County from midnight until 5 a.m. Broward County, Emergency Order 20-28, at https://www.broward.org/CoronaVirus/Documents/Emergency% 20Order% 2020-28.pdf. Unlike Miami-Dade County's Emergency Order 30-20, Broward County's Emergency Order 20-28 contained no findings with respect to the economic impact Broward County's restrictions would have on restaurants, in satisfaction of the Governor's Executive Order 20-244.

The County's declaration of a local state of emergency has been extended every week since it was first declared on March 12, 2020. Accordingly, the County's curfew and the limitations on restaurants such as Plaintiff 7020 Entertainment LLC remain in place. The Plaintiffs challenge Miami-Dade County's curfew on several grounds. First, they allege the curfew violates the First Amendment as it is content-based (Count I), is underinclusive (Count II), and lacks narrow tailoring (Count III). The Plaintiffs also allege the curfew violates the Equal Protection Clause (Count IV) and the Florida Constitution (Count VI). Plaintiffs additionally allege the County, in

enforcing its curfew has violated the First and Fourth Amendments (Count V). Finally, the Plaintiffs argue that the County's curfew is preempted by the Governor DeSantis's Executive Order 20-244 (Counts VII-IX) and is invalid as an ultra vires act (Count X).

## 2. Legal Standard

### A. Motion to Dismiss

When considering a motion to dismiss under Federal Rule 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)

2021 WL 516282

In applying the Supreme Court's directives in Twombly and Iqbal, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*4 Kivisto v. Miller, Canfield, Paddock & Stone, PLC, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted). "This is a stricter standard than the Supreme Court described in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), which held that a complaint should not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Mukamal v. Bakes, 378 F. App'x 890, 896 (11th Cir. 2010). These precepts apply to all civil actions, regardless of the cause of action alleged. Kivisto, 413 F. App'x at 138.

### 3. Analysis

#### A. Preemption

The Court turns first to Counts VII-IX of the Plaintiffs complaint which argue the County's curfew is preempted by the Governor's Executive Order 20-244. In Miami-Dade County v. Miami Gardens Square One, Inc., No. 3D20-1512, ––– So.3d ––––, 2020 WL 6472542 (Fla. 3d DCA Nov. 4, 2020), the Third District Court of Appeal considered claims raised by Tootsie's Cabaret that Emergency Orders 27-20 and 30-20 were preempted by Executive Order 20-244. In its opinion, the Third District Court of Appeal noted that preemption is a "facial attack on the constitutionality of a legal enactment" which requires the challenger to "demonstrate that no set of circumstances exist in which the law can be constitutionally valid." Id. at ––––, 2018 WL 6505915 at *2. In considering whether the County's emergency orders were preempted by the Governor's executive order, the Third District Court of Appeal concluded the County's orders were not expressly or impliedly preempted or preempted by conflict. Id. at ––––, 2018 WL 6505915 at *6 ("EO 20-244 does not expressly preempt curfews by local government. Neither implied preemption nor conflict precluded the County's curfew orders.").

The Plaintiffs urge this Court not to follow the precedent set out in Miami Gardens because "[t]he analysis in that case is flawed and

strained and should be rejected by this Court" but fail to articulate for the Court the flaws or mistakes in the Third District Court of Appeal's reasoning. (ECF No. 1, at ¶ 170 n. 10.) The Plaintiffs also argue that the Court should decline to following *Miami Gardens* as "District Judge Singhal ... determined that Broward County's nearly identical curfew failed due to a lack of record proof of the economic costs of the regulation." (ECF No. 25, at 3.) Indeed, in *828 Mgmt. LLC v. Broward Cty.* Judge Singhal considered whether Broward County's Emergency Order 20-28 was preempted by Executive Order 20-244. Unlike in *Miami Gardens*, Judge Singhal found that Broward County's curfew order was preempted because it did not quantify "the economic impact of each restriction, limitation or requirement on those restaurants impacted, and 'explain[ ] why each limitation or requirement is necessary for public health." No. 20-62166-Civ, ––– F.Supp.3d ––––, ––––, 2020 WL 7635169, at *7 (S.D. Fla. Dec. 21, 2020) (Singhal, J.).

Upon review, the Plaintiffs ignore a material difference between Miami-Dade County and Broward County's curfew orders. Specifically, the Miami-Dade County curfew order recognizes that the restaurant industry experienced a reduction in sales of 54 percent and that such reduction was caused, individually and collectively, by the County's COVID-related orders, including the County's curfew, and customers' decisions not to patronize restaurants due to concerns about COVID-19. Accordingly, Miami-Dade County's curfew order satisfies Executive Order 20-244 in that it quantifies the economic impact of COVID-related limitations on

restaurants and, as set forth above, explains why such restrictions are necessary for public health. The Broward County order, however, as recognized by Judge Singhal, failed to include any quantification of the economic impact the County's COVID-related orders had on restaurants in Broward County, and therefore on that basis, Judge Singhal found Broward County's order was preempted by the Governor's Executive Order 20-244.

**\*5** As Miami-Dade County's curfew sets forth both the economic impact of the County's curfew order and the justification underlying the County's curfew, the Court sees no reason to deviate from the Third District Court of Appeal's holding in *Miami Gardens*. Accordingly, the Court **grants** the County's motion with respect to Counts VII through IX of the Plaintiff's complaint.

## B. Ultra Vires

The Court turns next to the Plaintiffs' claim that the County's curfew is an ultra vires act. In support of their argument, the Plaintiffs claim that the Miami-Dade County Code only permits the County to impose a "general curfew applicable to Miami-Dade County as a whole, or to geographical area(s) of Miami-Dade County" but because the County's curfew exempts certain businesses or other groups from its mandate, the Plaintiffs claim the curfew is a "limited curfew" that violates the Miami-Dade County Code and is therefore invalid. *See* § 8B-7(2)(e), Miami-Dade County Code. The Plaintiffs point the Court to no authorities, nor is the Court aware of any authorities, that state the County cannot

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)

2021 WL 516282

impose a curfew with necessary exemptions or where courts have used the Plaintiffs' "general" versus "limited" distinction. For instance, in 🚩 *Smith v. Avino*, the Eleventh Circuit considered a curfew that was put in place by Miami-Dade County in the wake of Hurricane Andrew. 🚩 91 F.3d 105 (11th Cir. 1996). There, the plaintiffs criticized the order as unconstitutionally vague because it allowed "authorized" travel, but provided no criteria for obtaining authorization or exceptions for necessary travel to or from work, school, religious activities, or for emergency personnel. Put another way, the Eleventh Circuit said the "plaintiffs argue that the curfew is constitutionally flawed because it did not contain built in-exceptions.' " 🚩 *Id.* at 109. Far from stating the County lacked authority to issue an emergency curfew with exceptions, the Eleventh Circuit stated "we ... agree with plaintiffs that in a normal situation, the proclamation should be as informative as possible" and include exceptions, but found the Hurricane Andrew curfew was not constitutionally flawed because it failed to do so. 🚩 *Id.* Far from indicating that an emergency curfew with exceptions is an ultra vires act, the Eleventh Circuit's decision in 🚩 *Smith* appears to indicate the best practice is for emergency orders and government proclamations to be detailed and include any necessary exemptions so individuals can understand their scope. The Court finds that, fully consistent with the Miami-Dade County Code, this curfew applies generally to Miami-Dade County, with necessary and appropriate exceptions. Reading the Miami-Dade County Code as urged by the Plaintiffs would severely curtail the County's ability to appropriately respond in times of crisis, whether it be a global pandemic, a natural disaster, or some other emergency. The Court declines to do so. Accordingly, the Court **grants** the County's motion to dismiss Count X of the Plaintiffs' complaint.

## C. Fourth Amendment

Next, the Plaintiffs allege the Defendant violated their First and Fourth Amendment rights when, on two occasions, the Miami-Dade County Police enforced the County's curfew early. Specifically, the Plaintiffs allege that on December 6, 2020, at 11:50 p.m., Miami-Dade police blocked access to KOD Miami by parking their patrol cars at the entrance to the strip club without consent to do so. They allege the Miami-Dade police did this a second time on December 14, 2020 at 11:20 p.m. While not stated in their complaint, Plaintiff's counsel represents in its briefing that the Miami-Dade police blocked the entrances to KOD Miami a third time on January 22, 2021 at 11:15 pm., and then goes on to conclusory state that these events were "coordinated at the highest levels of government – perhaps as retaliation for the filing of this suit." (ECF No. 25, at 9 n.7.) Plaintiffs had the opportunity to include this additional allegation in an amended complaint, but failed to do so. As a result of these early enforcements of the County's curfew, the Plaintiffs allege the County unlawfully seized its property in violation of the Fourth Amendment. The Plaintiffs also allege that the actions of the County police violated their First Amendment rights because Plaintiffs were prevented from disseminating "constitutionally protected expression to those who wished to

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)

2021 WL 516282

view dance and hear music, but were blocked entrance to the facility." (ECF No. 1, at ¶ 156.)

**\*6** The Plaintiffs raise the Fourth Amendment claims with respect to Miami-Dade County and not any individual officers who they allege unlawfully enforced the County's curfew. "Municipalities and other local government entities are subject to liability under § 1983 and may be sued directly for relief where 'action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.' " *Barmapov-Segev v. City of Miami,* No. 19-23742-Civ, 2019 WL 6170332, at \*3 (S.D. Fla. Nov. 20, 2019) (Scola, J.) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The County cannot be held liable simply because it has employed a tortfeasor, but rather, the Plaintiffs must show that the alleged constitutional violation "resulted from a custom, policy, or practice of a local government entity" for that entity to be held liable. *Id.*, at \*3. A policy or custom is proven by " 'showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval.' " *Id.*, at \*4 (quoting *German v. Broward Cty. Sheriff's Office,* 315 F. App'x 773, 776 (11th Cir. 2009)). The practice "must be so pervasive 'as to be the functional equivalent of a policy adopted by the final policymaker.' " *Id.* (quoting *Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir. 1994)). While repeated violations of a policy may constitute constructive notice, random acts or isolated incidents are insufficient to establish a custom or policy." *Id.*

Here, the Court finds that the Plaintiffs have failed to adequately allege that the County has a policy or custom with respect to early enforcement of the County's curfew resulting in violation of the Plaintiffs' First and Fourth Amendment rights. The Plaintiffs are unable to "point to an official policy" and have failed to allege a "pattern of violations of the First Amendment or the Fourth Amendment" which "dooms [their] claim of municipal liability." *Everett v. Cobb Cty., Ga.,* 823 F. App'x 888, 893 (11th Cir. 2020). While the Court notes the allegation as to the police's early enforcement of the County's curfew on January 22, 2020 is not properly before the Court as the allegation was not raised in the Plaintiffs' complaint, even if it were before the Court, the Court finds that the Plaintiffs still would have failed to adequately allege that the County has a policy or custom of early enforcement of its curfew. Far from a pattern, these early curfew enforcements seem to be isolated incidents pertaining to a policy that has been in place for over 7 months. The Plaintiffs, for instance, fail to allege that the County police have enforced the County's curfew early at other similarly situated businesses or any other facts which would tend to show the County's practice is "so pervasive" as to be the functional equivalent of a policy. Similarly, the Court finds that the Plaintiff has provided no allegations whatsoever to support its conspiratorial claim that the isolated incidents of early enforcement of the County's curfew were being "coordinated at the highest levels of government." (ECF No. 25, at 9 n.7.) Accordingly, the Court **grants** the County's motion to dismiss with respect to Count V of the Plaintiff's complaint.

### D. Florida Constitution

The Court now turns to the Plaintiffs' claim that the County's curfew violates the Florida Constitution's rights to privacy and assembly. Article I, Section 23 of the Florida Constitution codifies the right to privacy and provides, "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life." FLA. CONST. ART. I, § 23. The right to free assembly is codified at Article I, Section 5, which provides "[t]he people shall have the right peaceably to assemble, to instruct their representatives, and to petition for redress of grievances." FLA. CONST. ART. I, § 5.

The Plaintiffs claim that the County's curfew infringes on their right to privacy because it restricts their ability to "travel by preventing their ability to work and to access shopping, friends, and family and medical services with Miami-Dade County" and their ability to "associate with persons of their choice both at work ... and in their personal life." (ECF No. 1, at ¶¶ 165-66.) The right to privacy and right to free assembly are fundamental rights under the Florida Constitution, which are typically subject to strict scrutiny. *Commitment of Smith v. State*, 827 So. 2d 1026, 1030-31 (Fla. 2d DCA 2002) ("the explicit right to privacy in the Florida Constitution is a fundamental right" subject to "the heavy burden of strict scrutiny"); *see also* *Wyche v. State*, 619 So. 2d 231, 234 (Fla. 1993) ("[t]he First Amendment and Article I, section 5 of the Florida Constitution protect the rights of individuals to associate with whom they please and to assemble with others ... for social

purposes. When lawmakers attempt to restrict or burden fundamental basic rights such as these, the laws must not only be directed toward a legitimate public purpose, but they must be drawn as narrowly as possible."). Nonetheless, the Fourth District Court of Appeal recently reviewed a Palm Beach County mask mandate which the plaintiff argued impinged on his right to privacy under the Florida Constitution and the Fourth District Court of Appeal, in upholding the mandate, noted that fundamental rights are important, "but ... not absolute." *Machovec v. Palm Beach Cty.*, No. 4D20-176, ––– So.3d ––––,––––, 2021 WL 264163, at *6 (Fla. 4th DCA Jan. 27, 2021).

**\*7** This is in accord with Eleventh Circuit precedent. In *Smith v. Avino*, which the Court discussed above, the Eleventh Circuit stated that "[c]ases have consistently held it is a proper exercise of police power to respond to emergency situations with temporary curfews that might curtail the movement of persons who otherwise would enjoy freedom from restriction." 91 F.3d 105, 109 (11th Cir. 1996). Thus, "fundamental rights such as the right of travel and free speech may be temporarily limited or suspended" during states of emergency. *Id.*; *see also* *Jacobson v. Mass.*, 197 U.S. 11, 25-27, 25 S.Ct. 358, 49 L.Ed. 643 (1905) ("liberty secured by the Constitution ... does not import an absolute right in each person to be, at all times, wholly freed from restraint ... a community has the right to protect itself again an epidemic of disease which threatens the safety of its members."). Where a curfew is instituted in response to an emergency situation, "governing authorities must be granted the proper deference and wide latitude

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)

2021 WL 516282

necessary for dealing with the emergency." 🚩 *Smith,* 91 F.3d at 109. In such cases, the appropriate standard of review is "whether the ... actions were taken in good faith and whether there is some factual basis for the decision that the restrictions imposed were necessary to maintain order." 🚩 *Id.* (internal quotations omitted). [2]

The character of constitutional questions before the Court are important ones, but they are not novel. For instance, during the smallpox epidemic, the City of Cambridge put in place comprehensive vaccination requirements and was sued by a man who did not wish to be vaccinated contending Cambridge's vaccination requirement violated his Fourteenth Amendment right to liberty. 🚩 *Jacobson,* 197 U.S. 11, 25 S.Ct. 358. The Supreme Court, in upholding the requirement, found the appropriate question for the Court to ask is whether the regulation "has no real or substantial relation to those objects, or is beyond all question, a plain, palpable invasion of rights secured by fundamental law." 🚩 *Id.* at 31, 25 S.Ct. 358. Where that is the case, it is the "duty of the courts to so adjudge, and thereby give effect to the Constitution." 🚩 *Id.*

The Plaintiffs argue that the "Supreme Court has clearly backed away" from its reliance on cases like 🚩 *Jacobson* in its recent 🚩 *Roman Catholic Diocese of Brooklyn v. Cuomo* decision, but the Court does not agree with the Plaintiffs' reading of the case. 🚩 ––– U.S. ––––, 141 S. Ct. 63, ––– L.Ed.2d (2020). In 🚩 *Roman Catholic Diocese* the Supreme Court acknowledged that judges "are

not public health experts" and "should respect the judgment of those with special expertise and responsibility in this area." 🚩 *Id.* at 68. Where a restriction, such as the County's curfew, impinges on Constitutional liberties, the Supreme Court noted that courts have a duty to conduct an examination of the measure to ensure that such measure is justified. 🚩 *Id.* This is precisely the proposition that 🚩 *Jacobson* stands for. Indeed, Chief Justice Roberts seemed to reaffirm 🚩 *Jacobson* in a concurring opinion in a different case where he stated:

> [o]ur Constitution principally entrusts [t]he safety and health of the people to the politically accountable officials of the States to guard and protect. When those officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad. Where those broad limits are not exceeded, they should not be subject to second-guessing by an unelected federal judiciary."

**\*8** 🚩 *South Bay United Pentecostal Church v. Newsom,* ––– U.S. ––––, 140 S. Ct. 1613, 1613-14, 207 L.Ed.2d 154 (2020) (Roberts, C.J., concurring) (internal quotations omitted).

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)

2021 WL 516282

The Plaintiffs also argue that the Eleventh Circuit has backed away from its decision in 🚩 *Smith* in *Robinson v. Attorney General.* 957 F.3d 1171 (11th Cir. 2020). Once again, the Court disagrees with the Plaintiffs' reading of precedent. Fully consistent with 🚩 *Smith* and in accord with 🚩 *Roman Catholic Diocese* and Chief Justice Roberts's concurrence, the Eleventh Circuit noted in times of emergency "states and the federal government have wide latitude in issuing emergency orders to protect public safety or health." *Id.* at 1179. The Circuit went on to say, wholly consistent with 🚩 *Smith,* that any such order, however, shall be subject to 🚩 *Smith* standard of review. *Id.* Accordingly, the Court finds that 🚩 *Smith* remains the law of the Eleventh Circuit and is compatible with the Supreme Court's opinion in 🚩 *Roman Catholic Diocese* and therefore must be applied by this Court.

Applying the standard set forth in 🚩 *Smith,* the Court finds that the County's curfew withstands appropriate scrutiny with respect to the Plaintiff's rights to privacy and to assembly. First, the Court finds that neither party contests the fact that the County's curfew was enacted in good faith. Indeed, at argument Plaintiffs' counsel acknowledged the good motivations behind the County's curfew. As such, the only question at issue is whether there is a factual basis sufficient for the Court to find that the curfew is necessary to maintain order. The Court finds that there is such a basis. As set forth above, in Amendment 1 to Emergency Order 30-20, the Mayor stated the County's curfew is necessary to "reduce the spread of COVID and to save lives by, among other things, prohibiting late night socializing which was a critical vector for the spread of COVID in May and June of this year" and is necessary to "ensure that people, particularly young people, are not gathering and socializing in ways that pose a direct threat to the health of themselves, their parents, and grandparents." (ECF No. 1-7.) This rationale is all the more justified as more virulent and contagious mutations of COVID-19 are being discovered around the world and appearing in communities throughout the United States. Moreover, healthcare resources throughout the country, including in South Florida have been strained by the COVID-19 pandemic, putting not only those who contract COVID-19 at risk, but others as well who suffer from a myriad of other health conditions that may be exacerbated by a lack of access to healthcare resources due to an overwhelmed system. The curfew is necessary not only to prevent individuals from eating and drinking maskless in bars and restaurants who late at night are more likely to eschew COVID protocols, but also is necessary to prevent the spread of COVID caused by individuals attending private parties late into the night where similar concerns come into play. The County's curfew withstands the 🚩 *Smith* standard and the Court therefore **grants** the County's motion to dismiss Count VI of the Plaintiffs complaint.

## E. First Amendment Claims

**\*9** The Plaintiffs next argue that the County's curfew is unconstitutional as it is a content-based restriction which cannot withstand constitutionally required strict scrutiny. The County, in response, argues that its curfew is a content-neutral time, place, and manner

restriction and should be upheld under intermediate scrutiny. While the County's curfew is appropriate under the *Smith* standard discussed above and the Court therefore need not reach the substance of the Plaintiffs' First Amendment speech claims, the Court notes for the sake of completeness that it agrees with the County that the curfew is a content-neutral restriction which withstands scrutiny. The Plaintiffs spill much ink arguing the County's curfew is content-based because it provides "numerous exemptions based on the nature of the speech – most obviously by favoring religious speech and religious speakers," (ECF No. 25, at 11) but the Plaintiffs' arguments miss the mark.

In support of their position, the Plaintiffs urge the Court to apply *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015). In *Reed* the Supreme Court stated that content-based regulations must withstand strict scrutiny. Where, as here, a regulation does not facially attack speech because of the message or idea expressed, such regulation may nonetheless be subject to strict scrutiny if it was adopted by the government because of a disagreement with the message the speech conveys. Upon review of the County's curfew, the Court notes that the curfew is facially content-neutral in that it doesn't attack speech because of the message or idea expressed, but rather, applies to everyone in Miami-Dade County, with certain enumerated exceptions for essential workers, those traveling to and from sporting events, and those traveling to or from any religious service. (ECF No. 1-5.)

The Seventh Circuit considered a similar argument raised by the Plaintiffs here when the Illinois Republican Party argued a carveout for the "free exercise of religion" in one of the Illinois Governor's COVID-related orders putting a 50-person cap on gatherings violated the Free Speech Clause of the First Amendment. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 761 (7th Cir. 2020). The Illinois Governor's executive order stated specifically, "[t]his Executive Order does not limit the free exercise of religion." *Id.* In its opinion,[3] the Seventh Circuit stated the question before it was whether it was permissible for the Illinois Governor in his COVID-19 related order "to subject the exercise of religion only to recommended measures, rather than mandatory ones." *Id.* at 764. As here, the Illinois Republican Party urged the Court to find that *Reed* prohibited such a carveout for religious activities. *Id.* at 764. The Seventh Circuit rejected the Illinois Republican Party's arguments finding the carveout for free exercise of religion was permissible as "the Supreme Court's Religion Clause cases, coupled with the fact that E[xecutive] O[rder] 43 is designed to give *greater* leeway to the exercise of religion, convinces us that the speech that accompanies religious exercise has a privileged position under the First Amendment." *Id.* Considering the Republican Parties' arguments pursuant to *Reed*, the Court found nothing prevented the Illinois Governor from "carv[ing] out some space for religious activities." *Id.* The County's curfew similarly gives greater leeway to the exercise of religion. The Plaintiffs have offered no arguments as to why the Court

should deviate from the Seventh Circuit's well-reasoned holding in *Pritzker* and the Court sees no reason to do so. Accordingly, the Plaintiffs' arguments pursuant to *Reed* that the County's curfew is content-based because of its carveout for the free exercise of religion fail.

**\*10** As the Court finds the County's regulation is content-neutral, the Court reviews the regulations as a content-neutral time, place, and manner restriction on speech. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Time, place, and manner restrictions are acceptable so long as they are "designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* The Supreme Court has more recently instructed that the latter prong of this analysis requires the Court to determine that the County's curfew is narrowly tailored, meaning it does "not burden substantially more speech than is necessary to further the government's legitimate interests" but need not be the least restrictive means of achieving the government's goals. *McCullen v. Coakley*, 573 U.S. 464, 486, 134 S.Ct. 2518, 189 L.Ed.2d 502 (2014).

As Judge King noted in reviewing a curfew put in place by the City of Key West, the government "has a substantial government interest in preserving and protecting the public health of its citizens ... [and] stemming the spread of COVID-19 is unquestionably a compelling government interest as the Supreme Court has held, it is most certainly a substantial government interest as well." *Day*, 2020 WL 7711681, at \*3. Indeed, Plaintiffs appear to concede this point. (ECF No. 25, at 15) (noting the County's interest in "limiting the spread of the Coronavirus"). The Court agrees with this finding from *Day* and notes this sentiment is echoed throughout the County's emergency orders. The Court therefore finds the County's curfew serves a substantial government interest. The only question that remains for the Court, therefore, is whether the County's curfew is narrowly tailored such that it does not unreasonably limit speech.

The Plaintiffs argue that the County's curfew is not narrowly tailored because the County's real target is "alcohol consumption by 'young people' rather than food service, entertainment, or late-night socializing." (ECF No. 25, at 16.) The Plaintiffs argue a prohibition on the sale of alcohol after midnight or a juvenile curfew, for instance, would allow the County to achieve its goal while reducing burdens on speech. The County responds that the Plaintiffs' formulations are inapposite because the County's curfew promotes the government's interest and that interest would be achieved less effectively absent the regulation. (ECF No. 27, at 5.) The County goes on to state that the appropriate question is not whether there is some other imaginable alternative, but rather, whether the means chosen help to effectuate the government's interest. (ECF No. 27, at 6.)

The Court agrees with the County and finds that the County's curfew is narrowly tailored. In Emergency Order 30-20, the County justified its curfew, stating, among other things, that "the County, during this pandemic, has observed that persons socializing at night, particularly youth, are often not attentive to social distancing, especially in places where

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)

2021 WL 516282

alcohol is served or available, including house parties, bars restaurants and clubs." (ECF No. 1-7.) The order goes on to state that the County has observed individuals in bars and restaurants typically are not wearing masks, and moreover, that late night socializing, in general, "was a critical vector for the spread of COVID" in Miami-Dade County. (ECF No. 1-7.) Accordingly, "medical experts ..., including members of the White House Coronavirus Task Force, have recommended that the County maintain the curfew in place ... to ensure that people ... are not gathering and socializing in ways that pose a direct threat to the health of themselves, their parents, and grandparents." (ECF No. 1-7.) While the Plaintiffs argue that other less intrusive means are available to the County to limit the spread of COVID such as a temporal ban on alcohol sales or a juvenile curfew, the Plaintiffs ignore the fact that their imagined alternatives would not fully serve the County's needs. For instance, a ban on alcohol sales after midnight would not prevent the late-night "house parties" that the government observed led to a spike in COVID-19 cases in the spring and summer. Similarly, the Plaintiffs' offered alternative of a juvenile curfew would not prevent adults from the type of late-night partying that led to a spike in COVID cases in South Florida before the County's curfew was put into place. Even if the Plaintiffs could devise some less restrictive means for the government to meet its stated goal, the question is not whether a court or a party could conclude "that the government's interest could be adequately served by some less-speech-restrictive alternative" but rather, is whether the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation" without

placing a "substantial portion of the burden on speech [that] does not serve to advance its goals." *Ward v. Rock Against Racism, 491 U.S. 781, 799-800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)* (internal quotations omitted). The Court finds that the County's curfew satisfies this standard. Without the County's curfew in place, the County is likely to experience a resurgence in COVID cases, as the County experienced in May and June of 2020. The Court is mindful that medical experts, including medical experts on the White House Coronavirus Task Force, have recommended that the County keep its curfew in place to help stem the spread of COVID-19. As stated above, when officials "undertake to act in areas fraught with medical scientific uncertainties, their latitude must be especially broad. Where those broad limits are not exceeded, they should not be subject to second-guessing by an unelected federal judiciary." *South Bay, 140 S. Ct. at 1613-14* (Roberts, C.J., concurring).

**\*11** Moreover, the County's curfew allows for significant other avenues for the Plaintiffs to engage in protected speech. The County's curfew allows the Plaintiffs to operate their business for 18 hours a day seven days a week and allows exotic dancers to continue to express themselves through electronic means. (ECF No. 1-5) ("Essential establishments are ... any business that is interacting with customers solely through electronic or telephonic means".) Far from placing a substantial burden on the Plaintiffs' First Amendment speech protections, the County has provided ample opportunity for the Plaintiffs to continue to share their passion for erotic dancing with their community 24 hours of the day, but six of those hours cannot be in person.

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)

2021 WL 516282

*See Day*, 2020 WL 7711681, at *4 ("To be clear, the Court is not suggesting that in-person public speech may always be prohibited so long as the speaker can use social media to express his or her views. On the contrary, the Court is finding that in this narrow circumstance where the City has a substantial interest in protecting public health, Plaintiff has an alternative way to express his viewpoints ... without undermining the City's legitimate government interest.") The Court therefore finds that the County's curfew does not unreasonably burden speech and is appropriately tailored to survive constitutional scrutiny.

Finally, the Plaintiffs argue that the County's curfew is unconstitutionally underinclusive, due to its carveouts for essential businesses, sporting events, and those attending religious services. The Court disagrees. The County's curfew is generally applicable and allows businesses to remain open that "either sell items necessary for everyday life or facilitate the mitigation of COVID-19." *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 231 (D. Md. 2020). That the curfew contains necessary carveouts does not mean that it is underinclusive as the Plaintiffs state.

Accordingly, while the Court relies principally on *Smith* in dismissing the Plaintiffs' First Amendment claims, the Court notes that even in the absence of that Eleventh Circuit precedent, the Court would still find that the Plaintiffs' First Amendment claims must fail. The Court, therefore, **grants** the County's motion to dismiss Counts I through III of the Plaintiffs' complaint.

### F. Equal Protection Clause

The Plaintiffs' last remaining claim is their argument that the County's curfew violates the Equal Protection Clause of the Fourteenth Amendment. As the Court has found that the County's curfew does not impinge on a constitutionally protected right and notes that the curfew implicates no suspect class, the County's curfew is subject to rational-basis review. *City of Dallas v. Stanglin*, 490 U.S. 19, 26-27, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). The Court has already determined that the County's curfew would survive intermediate scrutiny, therefore the Plaintiffs' Equal Protection claim also must fail. The Court **grants** the Defendant's motion to dismiss Count IV of the Plaintiffs' complaint.

### 4. Conclusion

As stated above, the questions posed by this case are important ones, but they are not novel. The country has faced significant public health crises and states of emergency before. In such situations, the Supreme Court and Eleventh Circuit precedents are clear: if the people's elected representatives are acting in good faith and enacting regulations aimed at combatting such crises and maintaining order, the unelected judiciary should defer to those decisions so long as they do not plainly and palpably invade fundamental rights without substantial relation to the government's stated cause. To act otherwise would be to usurp the functions of another branch of government. It is the duty of the courts to review such restrictions, but to do so with judicial humility. The County's curfew performs the necessary function of reducing the

opportunity for COVID-19 to spread at late-night parties, whether privately hosted or at a public restaurant like KOD Miami, where attendees are less likely to abide by COVID-19 protocols. The County has observed that late-night partying was a critical vector in the spread of COVID-19 during 2020 and has maintained its curfew at the advice of medical experts and the White House Coronavirus Task Force. Upon review, the County's curfew was enacted in good faith and does not plainly invade fundamental rights without relation to the County's stated mission of stemming the spread of COVID-19. The Court therefore concludes that the County's curfew is constitutional and that that the Plaintiffs' case must be dismissed.

**\*12** For the reasons stated above, the Court **grants** the Defendant's motion to dismiss. (**ECF No. 18**.) The Clerk is directed to **close** this case. All pending motions, if any, are **denied as moot**.

**Done and ordered**, in Miami, Florida, on February 10, 2021.

**All Citations**

--- F.Supp.3d ----, 2021 WL 516282

## Footnotes

1    The Court takes judicial notice of the state and county emergency and executive orders available from official government websites. *See Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-Civ, 2017 WL 3503371, at \*7 (S.D. Fla. Aug. 15, 2017) (Scola, J.). The Court further finds that many of these documents are indisputably authentic and are relied upon by the Plaintiffs in their complaint as they are earlier versions of government documents discussed throughout the Plaintiffs' pleading. *ADT LLC v. Alder Holdings, LLC*, No. 17-81237-Civ, 2018 WL 6505915, at \*3 (S.D. Fla. Nov. 7, 2018) (Reinhart, Mag. J.), *report and recommendation adopted*, 2018 WL 6620301 (S.D. Fla. Dec. 4, 2018) (Rosenberg, J.).

2    The Court is aware that in a recent decision by Judge King considering constitutional challenges to a curfew implemented by the City of Key West, Judge King declined to follow 🚩 *Smith v. Avino* finding "COVID-19, while deadly and severe, does not present the same concerns of looting, chaos, and violence during riots that may result from a natural disaster." *Day v. City of Key West*, No. 20-cv-10151, 2020 WL 7711681, at \*3 n.2 (S.D. Fla. Dec. 29, 2020) (King, J.). Respectfully, the Court disagrees with the approach taken in *Day*. Both Miami-Dade County and Florida's Governor have declared states of emergency, which remain ongoing. The Court views it as inappropriate to substitute its judgment for those of elected officials in determining whether an emergency is of sufficient character to warrant deference

7020 Entertainment, LLC v. Miami-Dade County, --- F.Supp.3d ---- (2021)

2021 WL 516282

to elected officials, particularly where there is global recognition of the severe and ongoing risk posed by the COVID-19 pandemic. The Eleventh Circuit was clear that elected officials must be granted "proper deference" by the Courts when dealing with emergencies. *Smith*, 91 F.3d at 109.

3   The Court notes that, further undermining the Plaintiffs' contention that courts are walking away from *Jacobson*, the Seventh Circuit specifically stated in *Pritzker* its approval of continued reliance on *Jacobson*. *Id.* at 763 ("The district court appropriately looked to *Jacobson* for guidance, and so do we.").

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.